## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Advance Trust & Life Escrow Services, LTA, as securities intermediary for Life Partners Position Holder Trust, and Alice Curtis on behalf of themselves and all others similarly situated, | Case No. 18-cv-02863 (DWF/ECW) |
| Plaintiffs, | |
| v. | **ORDER** |
| ReliaStar Life Insurance Company, | |
| Defendant. | |

This matter is before the Court on the Motion for Leave to File Second Amended Class Action Complaint (Dkt. 105) ("Motion to Amend") brought by Plaintiffs Advance Trust & Life Escrow Services, LTA, as securities intermediary for Life Partners Position Holder Trust, and Alice Curtis (collectively, "Plaintiffs"). For the reasons discussed below, the Court grants the Motion to Amend.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Advance Trust & Life Escrow Services, LTA ("Advance Trust") filed this putative class action on October 5, 2018. (Dkt. 1.) A First Amended Class Action Complaint was filed on February 24, 2020, which added Curtis as a named plaintiff and alleged subclasses for which Plaintiffs may alternatively seek class certification. (Dkt. 84 ¶¶ 10, 31.) Both the original Complaint and the First Amended Class Action Complaint alleged a single count for breach of contract. (Dkt. 1; Dkt. 84.)

Specifically, Plaintiffs alleged that Defendant ReliaStar Life Insurance Company ("ReliaStar") breached universal life insurance policies that ReliaStar, or its predecessors-in-interest, issued by failing to determine cost of insurance ("COI") rates based solely on expected future mortality experience and deducting COI charges based on those impermissibly determined rates.[1]  (Dkt. 84 ¶¶ 1, 5, 7, 15, 18, 26-27, 41.) Plaintiffs alleged that ReliaStar is obligated by a provision in certain standardized form contracts to decrease COI rates to reflect improved projected mortality experience but has not so decreased the rates.  (*Id.* ¶¶ 5, 7, 15, 18, 26-27, 41.)

The Court entered a Pretrial Scheduling Order on February 1, 2019.  (Dkt. 41.) That Order set the following deadlines:

- July 12, 2019 – deadline to file motions seeking to amend pleadings or add parties;

- September 6, 2019 – deadline to file class certification motion and opening of pre-class certification expert discovery;

- September 27, 2019 – deadline for substantial completion of fact discovery; and

- December 23, 2019 – close of fact discovery and pre-class certification expert discovery, including depositions.

(*Id.* at 3, 5-6.)[2]

Deadlines relating to trial experts, dispositive motions, and trial were to be addressed following an order on class certification.  (*Id.* at 3.)  The parties stipulated to

---

[1]    According to Plaintiffs, the COI covers the death benefit protection.  (Dkt. 107 at 9.)

[2]    Citations to page numbers refer to the ECF pagination unless otherwise indicated.

several amendments to the Scheduling Order, each time extending the deadlines for class

certification briefing and disclosures regarding pre-class certification experts, substantial

completion of fact discovery, the close of fact discovery, and the close of pre-class

certification expert discovery.  (Dkt. 54; Dkt. 80; Dkt. 89; Dkt. 126.)  The current

schedule (Dkt. 126), entered on July 1, 2020, after the June 12, 2020 hearing on the

Motion to Amend,[3] sets the following deadlines:

- October 23, 2020 – deadline to file class certification motion and opening of pre-class certification expert discovery;

- November 13, 2020 – deadline for substantial completion of fact discovery; and

- March 11, 2021 – close of fact discovery and pre-class certification expert discovery, including depositions.

(Dkt. 126.)  None of the amendments extended the original July 12, 2019 deadline for

filing motions seeking to amend pleadings or add parties.

On January 4, 2019, Plaintiffs requested information related to COI rates and

charges, namely documents showing data over time for the policies at issue that reflected

changes to policy charges, premiums, and riders and that separately identified amounts of

charges and deductions.  (Dkt. 108-2 at 3, 7-8.)  Plaintiffs also asked in an interrogatory

for identification of "monthly COI rate scales used to determine COI charges for policies

issued on" certain policy forms.  (Dkt. 108-4 at 6-7.)  ReliaStar served its answer to that

---

[3]     The parties' briefs and arguments at the June 12 hearing refer to deadlines set by the March 18, 2020 Amended Pretrial Scheduling Order, which was effective at the time of those arguments and set a deadline for the class certification motion of July 24, 2020 and a close of fact discovery and pre-class certification expert discovery of December 11, 2020.  (Dkt. 89.)

interrogatory on March 14, 2019 (Dkt. 108-5 at 5), then amended its response on July 2, 2019 (Dkt. 108-6 at 6), and amended it again on November 8, 2019 (Dkt. 108-7 at 6). Each response identified documents that contained COI rate tables, with the amended responses identifying new documents not previously identified.[4]  (Dkt. 108-5 at 5; Dkt. 108-6 at 6; Dkt. 108-7 at 6.)

In March 2020, Plaintiffs asked ReliaStar follow-up questions about the COI rate information that had been produced, including requesting that ReliaStar identify, on a monthly basis, the amount "used to calculate the COI and rider charges for [Advance Trust's] policy, (2) the COI and rider charges deducted, and (3) the COI and rider rates applied," prompted by Plaintiffs' determination that certain produced information could not be reconciled with other information.  (Dkt. 108-8 at 3; Dkt. 108-9 at 2-3.)  In particular, Plaintiffs sought this information because they could not reconcile the COI charges and rates with the rest of the policy data.  (*See* Dkt. 107 at 11-12.)  In response, on March 26, 2020, ReliaStar provided a spreadsheet breaking out various data points for the policy.  (Dkt. 108-3 at 9; Dkt. 108-11.)  The formulas in the spreadsheet showed 15% added to the COI charge ("Base COI") and WP Rider charge ("WP COI") for Advance Trust's policy every month.  (Dkt. 107 at 12.)  The rider at issue provides for a waiver of all policy charges in the event that the insured becomes totally disabled.  (Dkt. 108-19 ¶ 31; Dkt. 107 at 9.)  The same day, Plaintiffs responded, pointing out the "15% bump up for COI rates and rider charges" and specifically asking where the "15% bump come[s]

---

[4]      ReliaStar's discovery responses and document production include information from Gibraltar Life Services, Ltd. ("Gibraltar"), a third party that administers some of the policies at issue in the Amended Complaint, including Advance Trust's.  (Dkt. 78 at 1-2.)

from" and for source documents explaining the bump.  (Dkt. 108-3 at 9.)  ReliaStar responded on April 13, 2020 that "the 15% increase shown in COI rates in the breakout reflects a COI increase . . . sometime in 1989," attaching a memorandum from 1989 that documented the increase and stating the memorandum would be formally produced in discovery.  (*Id.* at 6-7.)  ReliaStar stated it would produce revised current COI tables for the Gibraltar-administered policies and sent the tables later that week.  (*Id.* at 6-7.)

Plaintiffs emailed again on April 20, 2020, asking additional follow-up questions about the COI tables and notifying ReliaStar that Plaintiffs "plan[ned] to amend the complaint to add a breach of contract claim/class since the rider rates apparently are now also 15% higher than permitted in the policy."  (*Id.* at 5-6.)  Plaintiffs attached a draft amended complaint and asked if ReliaStar would oppose a request for leave to amend the complaint.  (*Id.* at 6.)  Plaintiffs asked again by email for a response to the proposed amendment on April 27, April 30, and May 4, 2020.  (*Id.* at 4-5.)  On May 4, 2020 ReliaStar stated that it would not consent to the amendment.  (*Id.* at 3.)  In response to Plaintiffs' question about the reasons for ReliaStar's opposition to the motion for leave to amend, ReliaStar stated that "[ReliaStar] opposes because it believes the claims are time-barred, and thus futile, and also that it is prejudicial to RLIC to add a different claim so far into the case."  (*Id.* at 2-3.)  After the parties conferred by phone, ReliaStar confirmed by email on May 6 that it would not consent to the motion.  (*Id.* at 2.)  Plaintiffs then filed the present motion for leave to amend their complaint on May 21, 2020 (Dkt. 105), attaching their proposed Second Amended Class Action Complaint (Dkt. 108-19).

The proposed Second Amended Class Action Complaint ("Second Amended Complaint") adds allegations for a new "class of policyholders who have been forced to pay excessive rider charges for their policies." (Dkt. 108-19 ¶ 1.) It further alleges that the policies at issue, including Advance Trust's, "provide that this rider charge is to be calculated using rates specified in the policies" and "do not give ReliaStar any discretion to charge rider rates that diverge from the contractually-specified rates," but ReliaStar has imposed "overcharges of at least 15 percent, and possibly more," thus breaching the terms of the policies. (*Id.* ¶ 9.) According to the proposed Second Amended Complaint, for policies with a waiver rider, the rider "specifies that '[t]he cost of this Rider is payable at the same time and in the same manner as the monthly deduction for the Policy,'" and the rider "charges are calculated using rates specified in the policy." (*Id.* ¶ 32.) Further, each of the policies "specify the exact rates that ReliaStar is obliged to charge for the Waiver Rider in each year that the insured is alive and the rider is in force." (*Id.*) The proposed Second Amended Complaint alleges that Advance Trust's policy states "that '[t]he monthly cost for this Rider is shown in the Table of Monthly Cost For Rider per $1,000'" and includes an alleged copy of the Table of Monthly Cost that specifies rates according to an insured's attained age. (*Id.*) "ReliaStar is in breach of the terms of the policies in the proposed Rider Overcharge Class because it has been calculating and deducting rider charges using rates other than these fixed rates (*i.e.*, those set forth in the table of monthly costs)." (*Id.* ¶ 33.) "The Advanced Trust policy, for instance, has been charged approximately $42.24 in excess rider charges over the last eight policy years, an overcharge of 15 percent of the amount permitted by the table of

monthly rider costs." (*Id.*)  According to the proposed Second Amended Complaint, "[o]ther policies that were issued by ReliaStar and administered by third party Gibraltar Life Services, Inc., have suffered the same 15 percent overcharges." (*Id.*)  The proposed Second Amended Complaint also alleges that ReliaStar "secretly hiked rider rates" (*id.* ¶ 33) and "concealed this rider overcharge," by "fail[ing] to separately disclose the amount of monthly Waiver Rider charges deducted from the policy value" in annual reports to policyholders and "fail[ing] to send policyholders any other notification or documentation of the excess rider rates it applied" (*id.* ¶ 34).

Advance Trust seeks to represent a class of policyholders, the "Rider Overcharge Class," consisting of "[a]ll current and former owners of universal life (including variable universal life) insurance policies issued by ReliaStar Life Insurance Company, or its predecessors, that include a Waiver Rider with a table of monthly cost for rider."  (Dkt. 108-19 ¶ 37.)  Plaintiff Curtis is not encompassed by this definition and does not seek to represent the Rider Overcharge Class.  (Dkt. 111 at 6, 16 n.11; *see* Dkt. 108-19 ¶ 37.)  As Plaintiffs did in their First Amended Class Action Complaint—for what they now call the "COI Overcharge Class"—Plaintiffs alleged subclasses to the Rider Overcharge Class for which they may alternatively seek class certification.  (Dkt. 108-19 ¶ 38.)

In addition to Plaintiffs' brief in support of its motion (Dkt. 107) and ReliaStar's brief in opposition (Dkt. 111), the Court permitted Plaintiffs to file a reply brief and ReliaStar to file a sur-reply limited to the issues of futility and prejudice.  (Dkts. 116, 117, 119.)  The Court held a hearing on the motion on June 12, 2020.  (Dkt. 122.)

## II.    <u>LEGAL STANDARD</u>

Plaintiffs' Motion to Amend is generally governed by Rules 15 and 16 of the

Federal Rules of Civil Procedure and Local Rule 16.3 of the Local Rules for the District

of Minnesota.

### A.    **Rule 15**

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be

freely given when justice so requires."  The determination as to whether to grant leave to

amend is entrusted to the sound discretion of the trial court.  *See, e.g., Niagara of Wis.*

*Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir.

1986) (citation omitted).  The Eighth Circuit has held that "[a]lthough amendment of a

complaint should be allowed liberally to ensure that a case is decided on its merits . . .

there is no absolute right to amend."  *Ferguson v. Cape Girardeau Cty.*, 88 F.3d 647,

650-51 (8th Cir. 1996) (citing *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989);

*Chesnut v. St. Louis Cty.*, 656 F.2d 343, 349 (8th Cir. 1981)).  Denial of leave to amend

may be justified by "undue delay, bad faith on the part of the moving party, futility of the

amendment or unfair prejudice to the opposing party."  *Sanders v. Clemco Indus.*, 823

F.2d 214, 216 (8th Cir. 1987) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also*

*Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (citation

omitted) ("A district court's denial of leave to amend a complaint may be justified if the

amendment would be futile.").

In this case, where ReliaStar has alleged that the proposed amendments are futile,

this Court must determine whether the proposed claims state a claim for relief at this

stage of the case.  *See Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010) ("Denial of a

motion for leave to amend on the basis of futility means the district court has reached the

legal conclusion that the amended complaint could not withstand a motion to dismiss

under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Accordingly, in reviewing a

denial of leave to amend we ask whether the proposed amended complaint states a cause

of action under the *Twombly* pleading standard . . . .") (citation and marks omitted); *see

also Hillesheim*, 897 F.3d at 955; *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001

(8th Cir. 2007) ("[W]hen a court denies leave to amend on the ground of futility, it means

that the court reached a legal conclusion that the amended complaint could not withstand

a Rule 12 motion."); *United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa*, 269 F.3d

932, 936 (8th Cir. 2001) ("The denial of leave to amend based on futility means that the

court found that the amended complaint failed to state a claim . . . .").  To "survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 550 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

(quoting *Twombly*, 550 U.S. at 556).  Analysis under Rules 15 and 12(b)(6) generally

requires a court not consider matters outside the pleadings to determine whether leave to

amend should be given.  *See Arias v. Am. Family Mut. Ins. Co.*, No. CV 13-1681

(PJS/JJG), 2013 WL 12145854, at *2 (D. Minn. Oct. 28, 2013) (citing *Casazza v. Kiser*,

313 F.3d 414, 417 (8th Cir. 2002)) (finding "[n]o matters outside the pleading may be

considered" when conducting a futility analysis under Rules 12(b)(6) and 15). Further, "a motion to amend should be denied on the merits only if it asserts clearly frivolous claims or defenses." *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999) (internal quotation marks and citation omitted). In other words, the "[l]ikelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous." *Becker*, 191 F.3d at 908 (citations omitted).

**B.    Rule 16**

Under Rule 15(a), leave to amend should be granted liberally, if "justice so requires." However, the Eighth Circuit has held that when a party has filed a motion to amend the complaint after the deadline provided in a court's pretrial scheduling order, then the court may properly require, pursuant to Federal Rule of Civil Procedure 16(b), that good cause be shown for leave to file a pleading that is out of time with that order. *See Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (citing *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999)). "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *In re Milk Prod. Antitrust Litig.*, 195 F.3d at 437-38 (citation omitted).

Scheduling orders pursuant to Rule 16(b)(1) "assure[ ] that at some point both the parties and the pleadings will be fixed . . . ." Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment. Moreover, "Rule 16(b) assures that '[a] magistrate judge's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly

10

disregarded . . . without peril.'" *Archer Daniels Midland v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 582 (D. Minn. 1999) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).  Under Rule 16(b), "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Similarly, Local Rule 16.3 requires a party moving to modify a scheduling order to "establish good cause" for the proposed modification.

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements."  *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)); *see also* Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").  "[T]he 'good cause' standard [of Rule 16(b)] is an exacting one, for it demands a demonstration that the existing schedule cannot be reasonably met despite the diligence of the party seeking the extension." *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 (D. Minn. 2000) (citation omitted).

While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, the Court will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (concluding that there was "no need to explore beyond the first criterion, [diligence,] because the record clearly demonstrate[d] that Bradford made only minimal efforts to satisfy the [scheduling order's] requirements").  In short, Rule 16(b) focuses on "the diligence of the party

11

seeking to modify a Scheduling Order, as opposed to the litany of unpersuasive excuses, inclusive or inadvertence and neglect, which commonly undergird an untimely Motion to Amend."  *Scheidecker*, 193 F.R.D. at 632 n.1 (citations omitted).

With these standards in mind, the Court turns to Plaintiffs' Motion to Amend.

## III.   ANALYSIS

### A.   Whether Plaintiffs Have Established Good Cause Under Rule 16

Plaintiffs contend they were diligent because the information about the 15% adjustment to the rider charge constitutes "newly discovered facts" that "only came to light as a result of Plaintiffs' repeated and specific inquiries."  (Dkt. 107 at 16.)  Plaintiffs further contend that they were diligent in seeking amendment once those facts came to light in March 2020.  (*Id.* at 16-17.)

ReliaStar's opening brief cites the Rule 16 good cause standard (Dkt. 111 at 7) and makes a passing reference to "[Plaintiffs'] delay in seeking amendment" when opposing amendment under the Rule 15 standard (*id.* at 13), but does not contend that Plaintiffs did not demonstrate the diligence required by Rule 16.  And although ReliaStar contended in its brief that Plaintiffs "paint a misleading picture of the history of the proceedings" (*id.* at 13), ReliaStar did not contend that Plaintiffs actually were in possession of the facts underlying the rider charge allegations before they received the spreadsheet on March 26, 2020.  ReliaStar also does not dispute that Plaintiffs were diligent in seeking the amendment once they had those facts.  Indeed, not until the June 12 hearing did ReliaStar assert that there is no good cause to extend the deadline for amending pleadings.  (*See* Dkt. 127 at 23-24.)  The Court could find that ReliaStar has waived its "good cause"

argument for failing to raise it in its opening brief.  *See, e.g.*, *Bahl v. Cty. of Ramsey*, 597 F. Supp. 2d 981, 983 n.4 (D. Minn. 2009) (citing *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived.")). Moreover, as explained below, the Court finds that Plaintiffs were diligent in seeking leave to amend to add the proposed rider charge claim.

Here, Plaintiffs received the spreadsheet breaking out "each piece of the monthly deduction calculation for Advance Trust's policy" and containing the formulas with the 15% adjustment to the COI charge and the rider charge on March 26, 2020.  (Dkt. 107 at 12 (citing Dkt. 108-3 at 9 (cited as page 8); Dkt. 108-11).)  At the hearing, ReliaStar argued that Plaintiffs could have discovered the rider rates earlier had they investigated discrepancies in documents that ReliaStar had produced before March 2020.  (*See* Dkt. 127 at 25-27.)  However, it is still unclear to the Court which documents ReliaStar thinks should have triggered an earlier investigation, when those documents were actually produced, and how Plaintiffs' response should have or would have differed had they started their investigation earlier, particularly in view of ReliaStar's supplementation of its interrogatory responses to identify additional documents.  In other words, ReliaStar has not identified an earlier date when the diligence clock should have started ticking than the March 26, 2020 date when the spreadsheet containing the formulas showing the 15% adjustment was provided.

As to after receiving the March 26 spreadsheet, Plaintiffs asked about "the 15% bump" for COI rates and rider charges on the same day (Dkt. 108-3 at 9) and, after further communication with ReliaStar, notified ReliaStar of their intent to file a motion to

amend the complaint on April 20 (*id.* at 5-6) and filed the motion on May 21, 2020 (Dkt. 105). Less than two months passed from when Plaintiffs learned of the facts underlying their new allegations and when they filed the motion, which included time waiting for ReliaStar to answer questions about the rider rates and to state whether it would oppose the motion. (*See* Dkt. 108-3 at 3-7.)

In sum, for the reasons discussed above, the Court finds that the spreadsheets produced on March 26, 2020 constitute "newly discovered information that could not have been obtained earlier through the exercise of reasonable diligence," *Doeling v. Bryniarski*, No. CV 10-1047, 2011 WL 13234817, at *7 (D. Minn. Apr. 25, 2011), and that Plaintiffs were diligent in seeking amendment after that discovery.

"If the court is satisfied that the movant was diligent, it will also generally consider possible prejudice to the nonmovant." *Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Minn. 2019) (citing *Sherman*, 532 F.3d at 717). As noted above, ReliaStar made only a passing reference to Rule 16's good cause standard in its opening brief and did not argue prejudice separate and apart from the undue prejudice at issue in connection with Rule 15. For the reasons explained in Section III.B.2, the Court concludes that the extension of the schedule to permit the Motion to Amend will not prejudice ReliaStar to the extent that it vitiates Plaintiffs' showing of good cause based on diligence—which is the primary measure of good cause. *See Sherman*, 532 F.3d at 716-17. Moreover, any prejudice imposed on ReliaStar as a result of the amendment can be cured in part by an appropriate extension of the pretrial schedule.

**B.      Whether Plaintiffs Have Met the Rule 15 Standard for Leave to Amend**

ReliaStar argues that Plaintiffs' motion for leave to amend under Rule 15 should be denied on grounds of futility and undue prejudice.  According to ReliaStar, first, Plaintiffs' new claim is time-barred because it relates to alleged conduct by ReliaStar in 1989 and 1990 and is therefore futile.  (Dkt. 119 at 1-2.)  Second, ReliaStar argues that a new claim at this stage of the litigation that is based on a different contract provision and new theory of liability on behalf of a new proposed class is highly prejudicial.  (*Id.* at 2.) ReliaStar's arguments are unavailing, and the Court concludes that Plaintiffs' new claim is not clearly frivolous and does not place an undue burden on ReliaStar.

**1.      Futility**

ReliaStar's primary futility argument is that the 15% increase in rider charges that forms the basis of Plaintiffs' proposed new claim occurred in 1990, and therefore a claim for breach of contract based on that increase is barred by the statute of limitations under Minnesota law (six-year statute of limitations) or Texas law (four-year statute of limitations).  (Dkt. 111 at 7-11; Dkt. 119 at 2-5.)  In particular, ReliaStar relies on the 1989 memorandum that ReliaStar emailed to Plaintiffs on April 13, 2020 when explaining when "the 15% increase shown in COI rates" occurred and later produced in discovery.  (*See* Dkt. 111 at 9-10; Dkt. 108-3 at 6-7.)  Plaintiffs respond that the 1989 memorandum relates to COI rates and does not mention rider rates.  (Dkt. 117 at 7, 10.) Plaintiffs further contend that the Court cannot consider the 1989 memorandum in connection with their Motion to Amend and that, in any event, each year that ReliaStar "overcharged" the rider rate constitutes a separate breach with its own accrual date.  (*Id.*

at 7-9 ("That is because when the policy states that, at attained age 55 (which is in 2019),

ReliaStar can only charge a rider rate of 0.2122, ReliaStar's decision to charge more than

that in 2019 is plainly not time-barred."); *id.* at 11-12.)

The Court first considers whether it can consider the 1989 memorandum in the

context of the Motion to Amend.  A futility analysis under Rules 15 and 12(b)(6)

generally requires a court not consider matters outside the pleadings to determine whether

leave to amend should be given.  *See Arias*, 2013 WL 12145854, at *2 (citing *Casazza*,

313 F.3d at 417) (finding "[n]o matters outside the pleading may be considered" when

conducting a futility analysis under Rules 12(b)(6) and 15).  However, "[t]hough 'matters

outside the pleading' may not be considered in deciding a Rule 12 motion to dismiss,

documents 'necessarily embraced by the complaint' are not matters outside the pleading."

*Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)

(citations omitted).

Here, the proposed Second Amended Complaint does not reference the 1989

memorandum.  Rather, it alleges:

> The policies provide that this rider charge is to be calculated using rates
> specified in the policies.  The policies do not give ReliaStar any discretion to
> charge rider rates that diverge from the contractually-specified rates.
> ReliaStar, however, has ignored these contractual rider rates, imposing
> overcharges of at least 15 percent, and possibly more.  These overcharges are
> a breach of the terms of the policies.

(Dkt. 108-19 ¶ 9.)

The proposed Second Amended Complaint further alleges that the rider charge is

deducted on a monthly basis based on rates specified in the policy, alleges that those rider

rates are based on the insured's attained age, and includes a table showing the monthly

rider cost based on attained age.  (*Id.* ¶ 32.)  There are no allegations in the proposed

Second Amended Complaint that refer to the 1989 memorandum or any change made to

rider rates in 1989 or 1990.  (*See generally id.*)  Moreover, ReliaStar has not argued that

the 1989 memorandum is "necessarily embraced by the complaint" such that the Court

could properly consider the memorandum under the Rule 12(b)(6) standard applicable

here.  The Court concludes that the 1989 memorandum is not necessarily embraced by

the proposed Second Amended Complaint such that the Court can properly consider it on

this Motion to Amend.  Indeed, the 1989 memorandum is not even part of the record

because neither Plaintiffs nor ReliaStar filed it in connection with the Motion to Amend.[5]

For all of these reasons, the Court will not consider the 1989 memorandum in connection

with the Motion to Amend.[6]

The Court next considers ReliaStar's argument that the rider charge claim in the

proposed Second Amended Complaint is futile because it is barred by the statute of

limitations.  A statute of limitations defense is not typically a ground for a Rule 12(b)(6)

dismissal "unless the complaint itself establishes the defense."  *Jessie v. Potter*, 516 F.3d

---

[5]     Since the 1989 memorandum is not part of the record, the Court will not attempt to
decide whether it relates only to COI charges (as Plaintiffs contend (*see* Dkt. 117 at 7,
10)) or also to rider charges (as ReliaStar contends (*see* Dkt. 119 at 2)).

[6]     ReliaStar seems to suggest Plaintiffs have acted improperly by not attaching to or
referencing the 1989 memorandum in the proposed Second Amended Complaint.  (*See*
Dkt. 111 at 10; Dkt. 119 at 3.)  ReliaStar has not argued that the proposed Second
Amended Complaint would not satisfy Rule 11 based on this omission and did not file
the 1989 memorandum for the Court's consideration in connection with the Motion to
Amend.  The Court declines to impute improper motives to Plaintiffs based on the
drafting of the proposed Second Amended Complaint.

709, 713 n.2 (8th Cir. 2008).  However, "when it 'appears from the face of the complaint

itself that the limitations period has run,' a limitations defense may properly be asserted

through a Rule 12(b)(6) motion to dismiss." *Varner v. Peterson Farms*, 371 F.3d 1011,

1016 (8th Cir. 2004) (citation omitted).

Here, the parties take a variety of positions regarding whether Texas or Minnesota

substantive law applies to the rider charge claim and which State's statute of limitations

applies.[7]  (*See, e.g.*, Dkt. 111 at 7-10 & n.5-7 (ReliaStar arguing Texas substantive law

and the Minnesota statute of limitations applies); Dkt. 117 at 10-13 & n.4 (Plaintiffs

making arguments under Minnesota and Texas substantive law); Dkt. 119 at 3-5

(ReliaStar arguing claims accruing before 2004 are subject to Minnesota statute of

limitations and that any post-2004 claims are time-barred under Texas law).)  Regardless,

the real dispute is whether Plaintiffs have plausibly alleged a breach of contract claim—

under Texas or Minnesota law—based on a theory that a breach occurred each time

ReliaStar charged a monthly rider rate in excess of that specified in the contract.  To

summarize the parties' positions, Plaintiffs contend:

> By the plain terms of Advance Trust's policy, ReliaStar has a continuing
> contractual obligation to apply these charges monthly and change the charge
> each year.

---

[7]     On one point, ReliaStar argues that "Plaintiffs' post-August 1, 2004 'new-breach-
with-every-charge' theory would accrue on the first alleged overcharge after August 1,
2004 and be time-barred four years later" under Texas's statute of limitations.  (Dkt. 119
at 4.)  ReliaStar appears to be suggesting that Plaintiffs' claim would accrue first in 1990
and again in 2004 when Minnesota's borrowing statute, Minn. Stat. § 541.31, became
effective.  The basis for this reasoning is unclear to the Court, but in any event, because
the Court finds Plaintiffs' separate breaches theory is not futile, the Court need not
address the effect of Minnesota's borrowing statute.

> When ReliaStar fails to comply with the numbers provided for in the table, and instead improperly charges policyholders more than the contractually specified monthly rates, a new cause of action accrues. So, even if ReliaStar began overcharging policyholders in 1989, which ReliaStar has not demonstrated, that still would not bar Plaintiffs' claims for overcharges that were not imposed until decades later—in 2014, 2015, 2016, 2017, 2018, 2019, and 2020.

(Dkt. 117 at 12 (citation omitted).)

ReliaStar responds that "[a] breach of contract claim accrues at the time of the alleged breach, regardless of whether the plaintiff was aware of the breach," *In re RFC & ResCap Liquidating Trust Action*, 332 F. Supp. 3d 1101, 1187 (D. Minn. 2018), and argues:

> Recognizing the problem with the accrual of their claim, Plaintiffs double down on the notion that they can avoid a limitations bar because a new breach occurred every time Plaintiffs were charged the higher rate over the course of the 30 years since implementation of the new rate. Plaintiffs' argument runs them headlong into another problem: the controlling authority. Although Plaintiffs rely heavily on cases from Illinois, California, and other states, they point to no authority in the jurisdictions that matter—Minnesota and Texas.

(Dkt. 119 at 3-4.)

In other words, the real dispute is over whether Plaintiffs' separate breaches based on the monthly rider overcharges theory is futile because Minnesota or Texas would not recognize that theory. If the Court finds that Plaintiffs' breach of contract theory is not futile under Minnesota or Texas law, it does not matter at this time which statute of limitations applies, because Plaintiffs have alleged, as an example, excess rider charges

occurring "over the last eight policy years" (Dkt. 108-19 ¶ 33), which would encompass conduct in both the last four and last six years.[8]

Relying on *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 837 (Minn. 2011), ReliaStar argues that the claim is futile under Minnesota law because it is time-barred. (Dkt. 111 at 9.)  This argument is primarily based on the assumption that the rider charges increased in 1989—which is not apparent from the face of the proposed Second Amended Complaint and which the Court cannot properly consider because the 1989 memorandum on which this argument is based is not necessarily embraced by the proposed Second Amended Complaint.  (Dkt. 119 at 2-3.)  Perhaps recognizing that the 1989 memorandum cannot be considered, ReliaStar argues that the allegation that excess rider charges occurred "over the last eight policy years" constitutes an allegation "that the rate increase dates from at least two years outside the longest potential limitations period under either the law of Minnesota (six years) or Texas (four years)."  (*Id.* at 3 (citing Dkt. 108-19 ¶ 33).)  The Court does not interpret a straightforward allegation exemplifying excess charges occurring over the last eight years as a concession or pleading that the cause of action **accrued** eight years ago so as to render the claim futile.

---

[8]     The Court notes the potential applicability of the discovery rule, addressed in ReliaStar's brief and raised at the hearing.  (Dkt. 111 at 8; Dkt. 127 at 35-38, 43.)  Since the Court does not accept, for the present motion, ReliaStar's position that Plaintiffs' rider charge claim accrued once in 1990 and thus is time-barred, the Court need not determine whether the discovery rule could apply and leave Plaintiffs with some claim that accrued in 1990.  The Court notes that Texas law does not categorically foreclose application of the discovery rule to breach of contract cases.  *See Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439-40 (5th Cir. 2006); *Gallier v. Woodbury Fin. Servs., Inc.*, 171 F. Supp. 3d 552, 566-67 (S.D. Tex. 2016).

Moreover, the claim alleged in *Hamann* is distinguishable from the rider charge claim alleged in proposed Second Amended Complaint.  In *Hamann*, "the wrongful conduct underlying the breach of contract claim [wa]s Park Nicollet's refusal to honor the Policy" that the plaintiff could be exempt from night call with no salary reduction, which "occurred in April 2005, **according to the complaint**."  808 N.W.2d at 833 (emphasis added).  In deciding *Hamman*, the Minnesota Supreme Court explained:

> The wrongful conduct at issue here, according to the complaint, is Park Nicollet's decision to require that physicians over age 60 take night call. Requiring physicians over age 60 to take night call is wrongful only because of the benefits Park Nicollet offered in the Policy.  Aside from the promise in the Policy itself, Hamann alleges no other contractual provision or law that would bind Park Nicollet to the night call restriction.  Because Park Nicollet revoked the Policy in April 2005, it had no continuing obligation to pay Hamann's original salary after he ceased taking night call in February 2008.

*Id.* at 835.

In the earlier case of *Levin v. C.O.M.B. Co.*, however, the Minnesota Supreme Court found that a complaint of a series of breaches, namely the "repeated failures to pay commissions in excess of the annual guaranteed minimum compensation, each of which breaches could have occurred only at the close or at some date after the close of a contract year," constituted "separate causes of action with different accrual dates."  441 N.W.2d 801, 803 (Minn. 1989).  Indeed, the Minnesota Supreme Court in *Hamann* distinguished *Levin* because "the obligation at issue in this case was not something that Park Nicollet was contractually or otherwise required to perform on an ongoing basis." 808 N.W.2d at 835.

Here, the proposed Second Amended Complaint does not allege the breach occurred in 1989, or that the breach occurred before either Minnesota's or Texas's statute

of limitations ran.  Rather, it alleges a series of breaches occurring each time a rider

charge in excess of the specified rate was charged, that ReliaStar was in breach of the

terms of the policies because it has been calculating and deducting rider charges using

rates other than these fixed rates (*i.e.*, those set forth in the table of monthly costs), and

also that the specified rate was based on the insured's attained age.  (Dkt. 108-19 ¶ 33.)

The Court concludes that Plaintiffs have plausibly alleged, at a minimum, that ReliaStar

had an ongoing obligation to charge the rider rates specified in the table and that a breach

of contract occurred each year when the insured was charged a rider rate that exceeded

the rate specified for that attained age, and consequently that Plaintiffs' breach of contract

claim is not "clearly frivolous" under Minnesota law so as to require denial of the Motion

to Amend.  *See Becker*, 191 F.3d at 908.

Although ReliaStar made arguments under Minnesota law, it contends that

substantive Texas law controls the proposed rider charge claim.  (Dkt. 111 at 8 n.5.)

ReliaStar cites *Howard v. Sunset Life Ins. Co. of Am.*, No. 03-01-00407-CV, 2002 WL

24053, at *5 (Tex. App. Jan. 10, 2002), and *Beavers v. Metro. Life Ins. Co.*, 566 F.3d

436, 440 (5th Cir. 2006), in support of its argument that Texas law renders the proposed

claim futile.  (Dkt. 119 at 4-5.)  In particular, ReliaStar contends: "Texas courts have

squarely held that periodic payments under insurance contracts do not give rise to 'new'

claims at the time of each payment."  (*Id.* at 4.)

The Court does not read the Texas cases cited by ReliaStar as rendering Plaintiffs'

proposed rider charge claim clearly frivolous.  *Howard* addressed whether an increase to

an insurance premium by the insurer was a breach of the terms of the policy where the

plaintiff contended that only the policyholder was permitted to increase the premium. 2002 WL 24053, at *1. In other words, the dispute centered on a promise that only the policy holder could increase the premium, not a promise to charge certain rates. The plaintiff did not pursue any ongoing breach theory—in fact, the parties did not seem to dispute that the conduct allegedly giving rise to the breach was a single incident—and the court did not state any general rule against such a theory. *See id.* at *5.

ReliaStar also cites *Howard* for the proposition that: "Where an insurance company allegedly breaches a life insurance policy by charging higher premiums than the contract permits, a new cause of action for breach does not accrue with each monthly overcharge; rather the claim as a whole accrues 'when [the insured] was first charged and paid the wrong premium amount.'" (Dkt. 111 at n.7.) This language is actually found in *Davis v. Minnesota Life Insurance Co.*, which held: "Minnesota Life showed the cause of action accrued in 1986, when Jacquelyn was first charged and paid the wrong premium amount, and negated the applicability of the discovery rule. Thus, appellants' claims are time-barred." No. 03-99-00882-CV, 2000 WL 795887, at *3 (Tex. App. June 22, 2000). As with ReliaStar's other cases, this case does not appear to involve an insured who put forth an ongoing breach theory, nor does it contain any general rule against such a theory. Rather, it addressed "the applicability of the discovery rule." *See id.*

Finally, in *Beavers*, the plaintiffs did not make any argument based on an ongoing breach theory and conceded that Texas's four-year statute of limitations would ordinarily bar their claim. 566 F.3d at 439. The issue in *Beavers* was the applicability of the

discovery rule, not whether Texas law recognized an ongoing breach theory. *See id.* at 439, 441.

In sum, these cases do not establish that Plaintiffs' rider charge claim, as pleaded, is clearly frivolous under Texas law. Moreover, both *Howard* and *Davis* were decided on summary judgment motions, illustrating the need for discovery to decide questions on, for example, the correct accrual date and applicability of the discovery rule, and reinforcing the Court's conclusion that adopting ReliaStar's statute of limitations defense at this stage would be premature.

For these reasons, the Court concludes that Plaintiffs' rider charge claim based on a series of separate breaches of an ongoing obligation to charge certain rates based on the insured's attained age is not clearly frivolous under Minnesota or Texas law and consequently is not futile. Rather, at this stage in the proceedings, Plaintiffs have plausibly alleged such a claim.

### 2.    Unfair Prejudice

ReliaStar also opposes amendment on prejudice grounds, contending that allowing the proposed amendment would subject it to totally new and burdensome discovery obligations and would delay the resolution of the case by many months. (Dkt. 111 at 13-15; Dkt. 119 at 7.) The Court has carefully considered ReliaStar's prejudice arguments and concludes that they do not warrant denial of the Motion to Amend.

A party opposing a motion to amend a pleading must not merely show prejudice: it must show **unfair** prejudice. *See Sanders*, 823 F.2d at 216 (citing *Foman*, 371 U.S. at 182). Much of ReliaStar's argument goes to the prejudice imposed by the burden of

discovery, but discovery, even if voluminous and complicated, does not on its own constitute unfair prejudice. *Brown v. Pfeiffer*, No. 019CV03132MWWKMM, 2020 WL 1164594, at *4 (D. Minn. Mar. 11, 2020) (quoting *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000)) ("Denial of leave to amend is not appropriate when unfair prejudice is claimed merely because the non-moving party would have the 'burden of undertaking discovery.'").  ReliaStar has described a complicated and lengthy discovery process, both for the existing claim and for the potential new claim (Dkt. 111 at 3-4, 12, 14), but it has not identified what about that process is or would be unfairly prejudicial as compared to that which is necessary to litigate the new claim.

Cases finding undue prejudice based on discovery burdens, moreover, often involve movants who have delayed unduly in bringing the amendments into the case. *See, e.g.*, *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454-55 (8th Cir. 1998) (finding no abuse of discretion where district court denied a motion to add new claims due to the movant's delay and lack of diligence in addition to prejudice to the defendants in having to reopen discovery after the deadline and near trial); *United States v. Bos. Sci. Corp.*, No. 11-CV-2453 (JNE/SER), 2018 WL 5617565, at *6-8 (D. Minn. Oct. 30, 2018) (describing movant's undue delay in asserting a new claim, the burdens directly resulting from that delay, supplemental jurisdiction issues, and concluding "[t]his grim prospect [of all-consuming discovery on a new claim], **combined with the other prejudicial results** should the proposed amendment be granted, requires denial of Higgins' motion") (emphasis added); *IBEW Local 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 527 (D. Minn. 2018) (denying motion to amend because the request was unduly delayed and

defendant would suffer prejudice); *Harris v. Chipotle Mexican Grill, Inc.*, No. 13-CV-
1719 (SRN/SER), 2016 WL 5952734, at *2 n.2 (D. Minn. Oct. 13, 2016).  As discussed
above, the Court finds that Plaintiffs were diligent and did not delay in bringing the
Motion to Amend.

Moreover, this case is not at such a late stage as to make a new claim unfairly
prejudicial.  Though the case has been pending since October 2018 (Dkt. 1) and
discovery has been ongoing since January 2019, fact discovery has not yet closed and,
under the current schedule, is not set to be substantially complete until November 13,
2020 and to close until March 11, 2021.  (Dkt. 126 at 2.)  The deadline for Plaintiffs'
class certification motion is October 23, 2020.  (*Id.*)  The Court has not set a deadline for
dispositive motions or trial, and the parties have not taken any depositions.  In contrast to
cases where leave to amend was denied on prejudice grounds based on the late stage of
the case, this case—although pending for some time—is still in the relatively early
stages.  *See, e.g.*, *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497-98 (8th Cir. 2008)
(district court did not abuse its discretion in denying a motion to amend due to potential
prejudice from a new claim proposed after most discovery, including depositions of the
parties, was completed, one month of discovery remained, and defendants represented
that "they would have to redo much of the discovery that had already been completed,
including depositions of the parties" ); *Bell*, 160 F.3d at 454-55 (finding no abuse of
discretion where district court denied a motion to add new claims because of, in addition
to the movant's delay and lack of diligence, prejudice to the defendants in having to

reopen discovery on new claims when the motion to amend was filed after the discovery deadline and five weeks before trial).

Accordingly, ReliaStar has not established that the proposed amendment will impose an undue burden on it. However, the Court recognizes that granting the Motion to Amend will expand the scope of discovery and will permit the parties to seek an appropriate extension of the schedule to permit ReliaStar adequate time to prepare its defense to the new claim and Plaintiffs adequate time to explore the new claim. In propounding new discovery, Plaintiffs should remember their representation to the Court that "ReliaStar will primarily need to produce only two categories of documents: (1) documents sufficient to prove the rider rates provided for in the policies at issue (e.g., copies of the subject policies), and (2) policy-level data, including applicable fields related to rider rates applied, rider charges, and insureds' attained ages." (Dkt. 117 at 15.)

For all of the reasons stated above, the Court grants Plaintiffs' Motion to Amend.

## IV.    <u>ORDER</u>

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT**: Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (Dkt. 105) is **GRANTED**.


DATED: September 2, 2020                          <u>*s/Elizabeth Cowan Wright*</u>
                                                  ELIZABETH COWAN WRIGHT
                                                  United States Magistrate Judge