## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| ADVANCE TRUST & LIFE ESCROW SERVICES, LTA, as securities intermediary for LIFE PARTNERS POSITION HOLDER TRUST, and ALICE CURTIS, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | Civil Action No. 0:18-cv-2863 |
| Plaintiffs, | ) ) | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| RELIASTAR LIFE INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) ) ) ) | |

Advance Trust & Life Escrow Services, LTA, as securities intermediary of Life Partners Position Holder Trust, and Alice Curtis (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, for its Complaint against defendant ReliaStar Life Insurance Company ("ReliaStar"), state as follows:

### NATURE OF THE ACTION

1.     This is a class action brought on behalf of Plaintiffs and similarly-situated owners of life insurance policies issued by ReliaStar.  Plaintiffs seek to represent two classes of ReliaStar policyholders: one class of policyholders who have been forced to pay unlawful and excessive cost of insurance ("COI") charges by ReliaStar, and another class of policyholders who have been forced to pay excessive rider charges for their policies.

2.     The policies at issue in this case are universal life policies issued on standardized form contracts by ReliaStar and its predecessors-in-interest.  Universal life ("UL") policies

combine death benefits with a savings or investment component, often known as the "account value" or "policy value."  A key feature of such policies is the "unbundling" or "transparency" of the various charges and credits.  This means that the monthly deductions are broken down into an array of discrete charges and credits: the COI charges, other contractually-specified costs, and crediting rates.  The Dictionary of Insurance Terms describes unbundled universal life insurance as "coverage in which the investment features, mortality element and cost factors of a life insurance policy are separated, permitting each part to be independently analyzed."  The COI charge is the policy's unbundled insurance component and is used to cover the insurer's mortality risk.  It is also referred to in the industry as the "mortality charge" or the "pure cost of protection."  ReliaStar's parent company, Voya, maintains a "Life Insurance Glossary" on its website, which defines "Cost of Insurance" as the deduction for "the pure death benefit protection" and as synonymous with "Mortality Charge":[1]

> **Cost of Insurance (COI)**
> Cost of Insurance (COI) is the automatic deduction made from the Accumulation Value on universal and variable universal life policies, for the pure death benefit protection. This cost is based on the net amount at risk under the policy, the insured's risk classification at the time of policy purchase and the insured's current age. The deduction occurs on a monthly basis. This is also known as Cost of Risk or Mortality Charge. Refer to your policy for the specific terms and conditions.

3.     Because COI charges are intended to compensate the insurer for mortality risk (i.e., the expected probability that the insured will die in a particular policy year), they are determined by the insurer based on its expectations of future mortality experience.  After issuance, an insurer is required to periodically review the COI rates to confirm that they correctly capture the insurer's projected mortality costs.  When mortality rates are projected to decline, the COI rates are required to be reduced.  If mortality rates are projected to increase, the insurer may be permitted to increase COI rates, subject to guaranteed maximum rates and other requirements and constraints.

---

[1] *See* http://voyacdn.com/life-web-page/life-insurance-glossary/6099 (last visited September 10, 2018).

4.      This principle is inherent in the meaning of "cost of insurance," and is further embodied in the plain language of the policies at issue in this case, which expressly states that COI rates "will be based on our expected future mortality experience"—and nothing else.  ReliaStar imposes other charges through which it recoups administrative costs and earns a profit, such as a maximum premium expense charge of 20% of each premium collected.

5.      By this agreement, the insurer is entrusted to dutifully decrease COI rates to reflect improved projected mortality experience.  ReliaStar, however, has been abusing this trust and breaching its contractual commitment.  In the face of decades of improving mortality rates in the time since the subject policies were issued, ReliaStar has not reduced COI rates.  Rather, it has kept the same rate scale in place for decades.  In doing so, ReliaStar has converted COI charges from a cost-recovery mechanism into a profit vehicle.  By retaining the difference between its projected mortality expenses and the COI rates charged to policyholders, ReliaStar has earned tens—if not hundreds—of millions of dollars in extra profit over the past decade.

6.      It is now well-documented that nationwide mortality expectations have *improved* significantly over the past several decades.  The Society of Actuaries and the American Academy of Actuaries periodically publish mortality tables based on information collected from America's largest insurers.  Those tables show that mortality rates have improved at a rate of roughly 1% per year over the past three decades.  ReliaStar's own regulatory filings confirm that ReliaStar has benefited from this improvement and that it expects these historical trends to continue into the future.  In its regulatory filings, ReliaStar indicates that they have experienced the same mortality improvement as the industry and expect it to continue.  In its 2010 filing, ReliaStar stated that, "[f]or older business, our mortality and premium persistency experience has generally been better than the anticipated experience factors underlying the non-guaranteed elements."  In each of 2014,

2015, 2016, and 2017, ReliaStar stated: "Regarding future experience, we expect historical mortality improvement trends and maintenance expense inflation to continue."

7.     This means that ReliaStar for at least the past four years has expected—and continues to expect—mortality rates to continue to go down and insureds to live longer than ReliaStar originally anticipated when the policies at issue were first priced.  This, in turn, means that ReliaStar's cost of providing insurance has decreased.  Despite these continuously improved mortality expectations and corresponding decrease in mortality risk, however, ReliaStar has never once, to Plaintiffs' knowledge, lowered the COI rates it charges its customers.  ReliaStar, instead, has wrongly construed its policies as granting it a nonsensical "heads I win, tails you lose" power, reserving the right to increase COI rates if there were to be an unexpected pandemic that made mortality worse than anticipated, but not requiring it to decrease COI rates in the face of years and years of improved mortality experience—an improvement that has, in fact, already occurred.  This position has no merit and ReliaStar has been violating, and continues to violate, the plain terms of its contracts with policyholders.

8.     In sum, ReliaStar has violated the terms of the subject policies by failing to base cost of insurance rates on its expectations as to future mortality experience, and instead using cost of insurance charges as a way to bolster its profits.  As a result of this misconduct, Plaintiffs seek monetary relief for the COI overcharges that ReliaStar has wrongly imposed and continues to impose on its customers.

9.     ReliaStar has also been overcharging policyholders, including Plaintiff Advance Trust, who purchased a rider that provides for the waiver of monthly charges in the event that the insured suffers total disability ("Waiver Rider"). Waiver Riders are attached to and part of the life insurance contract. ReliaStar deducts a separate monthly charge for the Waiver Rider, which is

4

often referred to as a rider charge. The policies provide that this rider charge is to be calculated using rates specified in the policies. The policies do not give ReliaStar any discretion to charge rider rates that diverge from the contractually-specified rates. ReliaStar, however, has ignored these contractual rider rates, imposing overcharges of at least 15 percent, and possibly more. These overcharges are a breach of the terms of the policies.

## THE PARTIES

10.     Plaintiff Advance Trust & Life Escrow Services, LTA ("Advance Trust") is organized under the laws of Texas and is located at 1404 S. New Road, Suite 200, Waco, Texas 76711.  Advance Trust is suing in its capacity as securities intermediary of Life Partners Position Holder Trust and is the owner of universal policy number CBS0143318.  This policy was originally issued by Security-Connecticut Life Insurance Company ("SCLIC") on February 1, 1988 in the State of Texas.  On October 1, 2003, SCLIC and ReliaStar merged, with ReliaStar being the surviving company.

11.     Plaintiff Alice Curtis ("Curtis") is a resident of Bowling Green, Kentucky.  Curtis was the owner of universal life policy number 996560W, which was originally issued by SCLIC on October 15, 1991 in the State of Tennessee.  After paying cost of insurance charges on the policy for 28 years, Curtis surrendered the policy in late 2019 in the face of the excessive COI charges being imposed by ReliaStar.

12.     Defendant ReliaStar Life Insurance Company is a corporation organized and existing under the laws of Minnesota and has its principal place of business in Minneapolis, Minnesota.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including Plaintiffs) and one defendant and the aggregate amount of damages exceeds $5,000,000.   This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

14.     This Court has personal jurisdiction over ReliaStar because it has its principal place of business in Minneapolis, Minnesota.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) because the events giving rise to Plaintiffs' cause of action occurred in this District, including ReliaStar's determination of COI rates.

## FACTUAL BACKGROUND

### A.     The COI Overcharge Policies at Issue

16.     The policies at issue are all flexible-premium, UL policies issued by ReliaStar or its predecessors-in-interest (the "Subject Policies").   They were all issued on standardized policy forms and insureds are not permitted to negotiate different terms.

17.     UL policies combine death benefits with a savings or investment component, often known as the "account value" or "policy value."   One benefit of UL policies is that they permit policyholders flexibility in the amount and timing of premiums necessary to keep the policies in-force. Unlike other kinds of whole life insurance that require fixed monthly premium payments, the premiums required for UL policies need only be sufficient to cover the COI charges and certain other specified expenses.   The COI charge is deducted from the policy value (i.e., the savings component) of the policy on a monthly basis, so the policyholder forfeits the COI charge entirely

to ReliaStar.  Any premiums paid in excess of COI charges and other charges are applied to the policy value.  These excess premiums earn interest at the credited rate.  This structure is beneficial because it allows policyholders the choice to either (i) minimize their capital investment and generate greater rates of return through other investments or (ii) to use the UL policy as a savings vehicle and earn interest on the account value.

18.     The COI charge is part of the insurance component of a UL policy.  It is supposed to be the insurer's cost of providing mortality coverage.  The size of the COI charge is highly significant to universal life policyholders.  First, it dictates the minimum amount of money that must be paid to keep a policy in force.  Second, high COI rates can quickly diminish policy value and reduce the amount of money on which interest can be earned.  Absent a secondary guarantee, if the policy value diminishes such that COI charges and certain other specified expenses can no longer be deducted, then the policy will go into grace and, if no additional premiums are paid after adequate time provided by an accurate grace notice, the policy may lapse.  Third, higher current and illustrated future COI rates reduce the value of a policy in the secondary and tertiary markets.

19.     The COI provision in the Representative Policy is as follows:

**COST OF INSURANCE RATES.** The monthly cost of insurance rate is based on the insured person's sex, attained age, and rating class.  Attained age means age on the prior Policy Anniversary.  Monthly cost of insurance rates will be determined by us from time to time.  ***These rates will be based on our expected future mortality experience.***

This policy language provides that the *only* factor that ReliaStar can and must consider when determining COI rates is "expected future mortality experience."  Nothing else.  Because the COI rates on the Subject Policies must be based solely on expectations as to future mortality experience, COI rates must be adjusted downward if those expectations improve.

20.     ReliaStar imposes other charges through which it recovers administrative expenses and earns a profit.  This includes premium expense charges of 20% of all premiums.  This means that the Subject Policies are "fully unbundled": each component of the policy has a separate charge. ReliaStar also profits from the interest spread it earns on policyholders' policy values (i.e., the difference between interest earned by ReliaStar on policy accounts and the amount of interest credited to policy accounts).

21.     ReliaStar has issued other insurance policies that do not require it to base its COI rates on mortality alone when that is its intention.  For example ReliaStar received permission from regulators to issue policies on policy forms stating that "[t]hese rates will be based on our expectations of future mortality, expenses and investment performance."  This is what is known as a Multi-Factor COI Provision, as it expressly allows the insurer to base COI rates on factors other than pure mortality, and converts the COI charge from a "pure mortality charge" to a "mortality *plus* charge."  The Subject Policies all contain Single-Factor COI Provisions: no factor other than expected future mortality experience may be considered.

**B.     ReliaStar Fails to Reduce COI Rates Despite Continued Mortality Improvement Over the Course of Three Decades**

22.     A mortality table is a chart showing the rate of death at a certain age.  Rate of death can be measured in terms of the number of deaths per thousand.  Separate tables are produced to reflect groups with different mortality.  Mortality tables will usually have separate tables for gender.  Mortality tables for use with individual life insurance policies additionally distinguish mortality rates for tobacco-use status, underwriting status, and duration since underwriting. Mortality tables are used by actuaries to calculate insurance rates and are designed to reflect mortality rate expectations.

23.     Beginning at least as early as 1941, the National Association of Insurance Commissioners (NAIC) has issued a series of Commissioners Standard Ordinary (CSO) mortality tables.  These are industry standard mortality tables that are commonly used by insurers to calculate reserves and to set maximum permitted cost of insurance rates in universal life policies.  CSO tables are also incorporated into I.R.S. regulations to define what constitutes "life insurance" and what is deductible for federal tax purposes.

24.     The 1980 table issued by the NAIC was called the 1980 Commissioners Standard Ordinary Smoker or Nonsmoker Mortality Table ("1980 CSO Mortality Table").  That table was the industry-standard table until 2001.  In 2001, at the request of the NAIC, the Society of Actuaries (SOA) and the American Academy of Actuaries (Academy) produced a proposal for a new CSO Mortality Table.  The accompanying report from June 2001 explained that (a) the 1980 CSO Mortality Table was still the industry-standard table and (b) expected mortality rates had improved significantly each year since the 1980 table issued.  The report stated:

> The current valuation standard, the 1980 CSO Table, is almost 20 years old and mortality improvements have been evident each year since it was adopted. . . . [C]urrent mortality levels . . . are considerably lower than the mortality levels underlying the 1980 CSO Table.[2]

25.     The report further explained that "[f]or most of the commonly insured ages (from about age 25 to age 75), the proposed 2001 CSO Table mortality rates are in the range of 50% to 80% of the 1980 CSO Table."  This means the tables are showing a substantial improvement in mortality in a 20-year time period.  These mortality improvements represent a substantial benefit that ReliaStar should have passed on to policyholders.  The final proposed tables were adopted as

---

[2] *See* Report of the American Academy of Actuaries' Commissioner's Standard Ordinary (CSO) Task Force, Presented to the National Association of Insurance Commissioners' Life and Health Actuarial Task Force (LHATF), June 2001, *available at* http://www.actuary.org/pdf/life/cso2_june01.pdf.

the 2001 Commissioners Standard Ordinary Mortality Table ("2001 CSO Mortality Table").  The 2001 CSO Mortality Table reflected vastly improved mortality experience as compared to the 1980 CSO Mortality Table.

26.     Since the 2001 CSO Mortality Table was introduced, the SOA has continued to conduct surveys of large life insurance companies for the death rates actually observed in their policies and compares these to published mortality tables.  These surveys have consistently showed mortality improvements over the last three decades, particularly for ages 70-90.  For example, the SOA published Individual Life Experience Reports for the periods 2002-2004; 2005-2007 and 2008-2009 each noting strong rates of improvement in mortality.  ReliaStar was one of the surveyed companies included in each of these studies.  Periodically the SOA will publish an updated table to reflect the evolving industry experience.  Major updates they have published over the last few decades include: (a) 1990-95 Basic Select and Ultimate Mortality Tables; (b) 2001 Valuation Basic Mortality Table, (c) 2008 Valuation Basic Table, and (d) 2015 Valuation Basic Table.  Each of these updates confirms that mortality had continued to significantly improve from the 2001 CSO Table.  Other surveys have also noted mortality improvements.  In May 2013, for example, the reinsurance company RGA published a report sponsored by the SOA enumerating mortality rates and mortality improvements at older ages, which showed material rates of mortality improvements.

27.     Despite this industry-wide improvement in mortality rates—and corresponding decrease in the cost of providing "pure death benefit protection"—ReliaStar has never decreased its COI rates for the Subject Policies.

28.     The extent to which ReliaStar is now overcharging policyholders is substantial. Although ReliaStar does not disclose its COI rates to policyholders, experienced actuarial experts

are able to approximate COI rates by reverse-engineering illustrations and annual reports. In Plaintiffs' case, ReliaStar was charging a monthly COI rate of approximately $0.57 per $1,000 of net amount at risk in January 2018. By contrast, the maximum COI charge that ReliaStar could charge Plaintiffs under the 2017 CSO Table—the most recent official mortality table—is 30.3 cents. This means that the rate that ReliaStar is currently charging Plaintiffs is so expensive that (a) it could not be used for a policy issued today under current mortality tables and (b) under its latest guidelines, the IRS would deem such a policy to violate "reasonable mortality charge requirements" and would not permit it to be treated as a life insurance policy for federal tax purposes.[3] Indeed, the COI charge is so large compared to current mortality tables that it strongly indicates that not only has ReliaStar failed to reduce COI rates as mortality experience and expectations improved, but also that, in setting COI rates, ReliaStar engaged in a practice called "loading," whereby an insurer (unlawfully) adds a profit margin on top of expected mortality rates when setting COI rates.

29.     ReliaStar has repeatedly acknowledged that, consistent with industry experience, its expectations of future mortality experience have improved. Each year, insurers are required to file annual interrogatory statements with the NAIC. These are sworn statements are certified and signed by an actuary. The interrogatories include questions regarding the setting of non-guaranteed elements (which include COI rates) and whether expectations have changed. For example, Question 4 asks: "Are the anticipated experience factors underlying any nonguaranteed

---

[3]  *See, e.g.,* I.R.S. Bulletin No. 2018-11 dated March 12, 2018, available at https://www.irs.gov/pub/irs-irbs/irb18-11.pdf (last visited October 2, 2018) ("The 2017 CSO tables became the prevailing commissioners' standard tables on January 1, 2017. For tax purposes, the 2017 CSO tables generally must be used for purposes of applying the reasonable mortality charge requirements of § 7702(c) (3)(B)(i) with regard to contracts issued on or after January 1, 2020. See Notice 2016– 63, 2016–45 I.R.B. 683. Either the 2001 CSO tables or the 2017 CSO tables may be used for contracts issued on or after January 1, 2017, and before January 1, 2020.").

elements [e.g., COI rates] different from current experience?"  In its 2010 filing, ReliaStar stated that, "[f]or older business, our mortality and premium persistency experience has generally been better than the anticipated experience factors underlying the non-guaranteed elements."  In each of 2014, 2015, 2016, and 2017, ReliaStar stated: "Regarding future experience, we expect historical mortality improvement trends and maintenance expense inflation to continue."  ReliaStar has therefore acknowledged that it has experienced a trend of improved mortality and admits that it expects this trend to continue.  Further, it admits that "[a]nticipated mortality experience may impact the level of cost of insurance and other contract charges."  But, despite repeating this statement in every annual statement for the past four years, and first acknowledging improved mortality almost a decade ago, ReliaStar did not reduce COI rates a single time.

30.     ReliaStar has concealed its wrongdoing: the monthly COI rates used to calculate COI charges are not disclosed to policyholders, nor are ReliaStar's mortality expectations.  Indeed, ReliaStar's annual statements do not even separately itemize COI charges, instead grouping them with rider costs.  And while ReliaStar's regulatory filings are theoretically available to the public, they also do not itemize COI charges and accessing them requires registration and payment of a fee, as well interpretation by an experienced life insurance expert.

### C.     ReliaStar's Breach of Policies with a Waiver Rider

31.     Numerous owners of ReliaStar universal life policies purchased additional coverage in the form of a Waiver Rider. This rider is a part of the policyholder's insurance contract, and provides for a waiver of all policy charges in the event that the insured becomes totally disabled.

32.     For this additional coverage, the policyholder pays the cost of the rider in the form of a monthly deduction, or rider charge. The Waiver Rider specifies that "[t]he cost of this Rider is payable at the same time and in the same manner as the monthly deduction for the Policy," i.e.,

12

the monthly rider charge is deducted from the policy value (the savings component) at the same time as the COI charge on a monthly basis. These charges are calculated using rates specified in the policy. Each of the policies in the proposed Rider Overcharge Class (defined below) specify the exact rates that ReliaStar is obliged to charge for the Waiver Rider in each year that the insured is alive and the rider is in force. For example, the copy of Advance Trust's policy in ReliaStar's records specifies that "[t]he monthly cost for this Rider is shown in the Table of Monthly Cost For Rider per $1,000." The Table of Monthly Cost For Rider per $1,000 on this copy of the policy, in turn, identifies particular rates by the insured's attained age:

| MONTHLY COST FOR RIDER PER $1,000. |
|---|---|---|---|---|---|
| Attained Age | Monthly Cost | Attained Age | Monthly Cost | Attained Age | Monthly Cost |
| 15 | 0.0089 | 30 | 0.0127 | 45 | 0.0430 |
| 16 | 0.0091 | 31 | 0.0135 | 46 | 0.0489 |
| 17 | 0.0092 | 32 | 0.0142 | 47 | 0.0555 |
| 18 | 0.0093 | 33 | 0.0150 | 48 | 0.0629 |
| 19 | 0.0093 | 34 | 0.0160 | 49 | 0.0713 |
| 20 | 0.0092 | 35 | 0.0172 | 50 | 0.0808 |
| 21 | 0.0096 | 36 | 0.0184 | 51 | 0.1005 |
| 22 | 0.0099 | 37 | 0.0198 | 52 | 0.1231 |
| 23 | 0.0102 | 38 | 0.0216 | 53 | 0.1489 |
| 24 | 0.0105 | 39 | 0.0237 | 54 | 0.1785 |
| 25 | 0.0108 | 40 | 0.0260 | 55 | 0.2122 |
| 26 | 0.0111 | 41 | 0.0287 | 56 | 0.2518 |
| 27 | 0.0114 | 42 | 0.0318 | 57 | 0.2971 |
| 28 | 0.0119 | 43 | 0.0351 | 58 | 0.3487 |
| 29 | 0.0123 | 44 | 0.0389 | 59 | 0.4074 |

33.     ReliaStar is in breach of the terms of the policies in the proposed Rider Overcharge Class because it has been calculating and deducting rider charges using rates other than these fixed rates (i.e., those set forth in the table of monthly costs). ReliaStar secretly hiked rider rates for these policyholders, extracting around 15 percent more in rider charges than permitted under the policies. The Advanced Trust policy, for instance, has been charged approximately $42.24 in excess rider charges over the last eight policy years, an overcharge of 15 percent of the amount

permitted by the table of monthly rider costs. Other policies that were issued by ReliaStar and administered by third party Gibraltar Life Services, Inc., have suffered the same 15 percent overcharges.

34.     ReliaStar concealed this rider overcharge from policyholders. The policies require ReliaStar to provide annual reports to policyholders that detail the premiums paid and all charges over the previous year. ReliaStar's annual reports for policies in the proposed Rider Overcharge Class failed to separately disclose the amount of monthly Waiver Rider charges deducted from the policy value, as well as the fact that ReliaStar was illegally charging policyholders using inflated rider rates that diverged, and significantly exceeded, the rates ReliaStar promised to charge in the policy. ReliaStar failed to send policyholders any other notification or documentation of the excess rider rates it applied to assess Waiver Rider charges. Instead, ReliaStar quietly overcharged customers by 15 percent, and possibly more, for years, in breach of the fixed rates specified in the policies.

## **CLASS ACTION ALLEGATIONS**

35.     This action is brought by Plaintiffs individually and on behalf of two classes pursuant to Rules 23(b)(3) of the Federal Rules of Civil Procedure.  The first class, referred to as the "COI Overcharge Class,"  consists of:

> All current and former owners of universal life (including variable universal life) insurance policies issued or administered by ReliaStar Life Insurance Company, or its predecessors, that provide: (1) an insurance or cost of insurance charge or deduction calculated using a rate based on expectations of future mortality experience; (2) additional but separate policy charges, deductions, or expenses; (3) an investment, interest bearing, or savings component; and (4) a death benefit.

The COI Overcharge Class does not include defendant ReliaStar, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

36.     Plaintiffs may also seek, in the alternative, certification of the following subclasses

to the COI Overcharge Class:

    a.   The "Texas COI Overcharge Subclass," which consists of: "All current and
        former owners of universal life (including variable universal life) insurance
        policies issued or administered by ReliaStar Life Insurance Company, or its
        predecessors, that were issued in the State of Texas and provide: (1) an
        insurance or cost of insurance charge or deduction calculated using a rate
        based on expectations of future mortality experience; (2) additional but
        separate policy charges, deductions, or expenses; (3) an investment, interest
        bearing, or savings component; and (4) a death benefit."

    b.   The "Tennessee COI Overcharge Subclass," which consists of: "All current
        and former owners of universal life (including variable universal life)
        insurance policies issued or administered by ReliaStar Life Insurance
        Company, or its predecessors, that were issued in the State of Tennessee
        and provide: (1) an insurance or cost of insurance charge or deduction
        calculated using a rate based on expectations of future mortality experience;
        (2) additional but separate policy charges, deductions, or expenses; (3) an
        investment, interest bearing, or savings component; and (4) a death benefit."

    c.   The "Modified Four Corners & Contra Proferentem Rule COI Overcharge
        Subclass," which consists of: "All current and former owners of universal
        life (including variable universal life) insurance policies issued or
        administered by ReliaStar Life Insurance Company, or its predecessors, that
        were issued in Texas, Vermont, or Montana, and provide: (1) an insurance
        or cost of insurance charge or deduction calculated using a rate based on
        expectations of future mortality experience; (2) additional but separate
        policy charges, deductions, or expenses; (3) an investment, interest bearing,
        or savings component; and (4) a death benefit."

    d.   The "Four Corners & Contra Proferentem Rule COI Overcharge Subclass,"
        which consists of: "All current and former owners of universal life
        (including variable universal life) insurance policies issued or administered
        by ReliaStar Life Insurance Company, or its predecessors, that were issued
        in Colorado, Connecticut, Delaware, Florida, Hawaii, Idaho, Indiana, Iowa,
        Kansas, Kentucky, Louisiana, Maine, Massachusetts, Minnesota,
        Mississippi, Missouri, Nebraska, Nevada, New Jersey, New York, North
        Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South
        Dakota, Tennessee, Utah, West Virginia, Wisconsin, Wyoming, or Puerto
        Rico and provide: (1) an insurance or cost of insurance charge or deduction
        calculated using a rate based on expectations of future mortality experience;
        (2) additional but separate policy charges, deductions, or expenses; (3) an
        investment, interest bearing, or savings component; and (4) a death benefit."

These four subclasses are collectively referred to herein as the "COI Overcharge Alternative Subclasses," and each excludes defendant ReliaStar, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.  Plaintiffs reserve the right to modify the Alternative Subclasses, or to propose differing subclasses that satisfy the requirements of Rules 23(b)(3) of the Federal Rules of Civil Procedure.

37.     Plaintiff Advance Trust seeks to represent a second class of policyholders, referred to as the "Rider Overcharge Class." The Rider Overcharge class consists of:

> All current and former owners of universal life (including variable universal life) insurance policies issued by ReliaStar Life Insurance Company, or its predecessors, that include a Waiver Rider with a table of monthly cost for rider.

38.      Plaintiff Advance Trust may also seek, in the alternative, certification of the following subclasses to the Rider Overcharge Class:

> a.  The "Texas Rider Overcharge Subclass," which consists of: "All current and former owners of universal life (including variable universal life) insurance policies (a) issued by ReliaStar Life Insurance Company, or its predecessors, (b) that were issued in the State of Texas, and (c) that include a Waiver Rider with a table specifying the monthly cost for the rider."

> b.  The "Modified Four Corners & Contra Proferentem Rule Rider Overchare Subclass," which consists of: "All current and former owners of universal life (including variable universal life) insurance policies (a) issued by ReliaStar Life Insurance Company, or its predecessors, (b) that were issued in Texas, Vermont, or Montana, and (c) that include a Waiver Rider with a table specifying the monthly cost for the rider."

39.     The COI Overcharge Class, each Overcharge Alternative Subclass, the Rider Class, and each Rider Alternative Subclass consist of hundreds of consumers of life insurance and are thus so numerous that joinder of all members is impracticable.  The identities and addresses of class members can be readily ascertained from business records maintained by ReliaStar.

40.     The claims asserted by Plaintiffs are typical of the claims of the COI and Rider Overcharge Class and the COI and Rider Alternative Subclasses.

41.     Plaintiffs will fairly and adequately protect the interests of the classes and Alternative Subclasses and do not have any interests antagonistic to those of the other members of those classes.

42.     Plaintiffs have retained attorneys who are knowledgeable and experienced in life insurance matters and COI matters, as well as class and complex litigation.

43.     Plaintiffs request that the Court afford class members with notice and the right to opt-out of any class certified in this action.

44.     This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the class predominate over any individualized issues.  Those common questions that predominate include:

        (a)     the construction and interpretation of the form insurance policies at issue in this litigation;

        (b)     whether ReliaStar's actions in failing to decrease the cost of insurance charges imposed on the COI Overcharge Class violated the terms of those form policies;

        (c)     whether ReliaStar based its COI charges on factors other than expectations as to future mortality experience;

        (d)     whether ReliaStar breached its contracts with Plaintiffs and members of the COI Overcharge Class and the Alternative Subclasses;

        (f)     whether ReliaStar's expectations as to future mortality experience have improved;

        (g)     whether ReliaStar applied waiver rider charges in excess of the charges specified in the Rider Overcharge Class policies; and

(h)     whether Plaintiffs and members of the class are entitled to receive damages as a result of the unlawful conduct by defendant as alleged herein and the methodology for calculating those damages.

45.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a)     the complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

(b)     when ReliaStar's liability has been adjudicated, claims of all class members can be determined by the Court;

(c)     this action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

(d)     without a class action, many class members would continue to suffer injury, and ReliaStar's violations of law will continue without redress while defendant continues to reap and retain the substantial proceeds of their wrongful conduct; and

(e)     this action does not present any undue difficulties that would impede its management by the Court as a class action.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

46.     Plaintiffs reallege and incorporate herein the allegations of the paragraphs above of this complaint as if fully set forth herein.  This claim is brought on behalf of Advance Trust, Curtis, the COI Overcharge Class, and the Alternative Subclasses

47.     The Subject Policies are binding and enforceable contracts.

48.     ReliaStar breached its contracts, including the covenant of good faith and fair dealing, with Plaintiffs and the COI Overcharge and Rider Overcharge Classes (and the respective Alternative Subclasses) by (a) failing to determine COI rates based on expected future mortality experience and deducting COI charges calculated based on those unlawful rates; and (b) charging rider rates in excess of the rider rates specified in the policies.  Plaintiffs' and COI Overcharge Class's damages include, but are not limited to, the excess COI charges that ReliaStar deducted by not reducing COI rates based on improved mortality. Plaintiff Advance Trust and the Rider Overcharge Class's damages include, but are not limited to, the excess rider charges that ReliaStar deducted in calculating charges for the Waiver Rider using rider rates in excess of those specified in the policies.

49.     Plaintiffs and the COI Overcharge Class have performed all of their obligations under the policies, except to the extent that their obligations have been excused by ReliaStar's conduct as set forth herein.

50.     As a direct and proximate cause of ReliaStar's material breaches of the policies, Plaintiffs and the COI Overcharge Class have been—and will continue to be—damaged as alleged herein in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, the COI Overcharge Class, and the Alternative Subclasses pray for judgment as follows:

1.      Declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.      Awarding Plaintiffs, the COI Overcharge Class, the Rider Overcharge Class, and the respective Alternative Subclasses compensatory damages;

3.      Awarding Plaintiffs, the COI Overcharge Class, the Rider Overcharge Class, and the respective Alternative Subclasses pre-judgment and post-judgment interest, as well as costs; and

4.      Awarding Plaintiffs and members of the the COI Overcharge Class, the Rider Overcharge Class, and the respective Alternative Subclasses such other relief as this Court may deem just and proper under the circumstances, including without limitation reinstatement and other equitable relief for policies that lapsed or were surrendered after ReliaStar's breach.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs and the class hereby demand a trial by jury as to all issues so triable.

Dated:  September 3, 2020                    Respectfully submitted,


                                                   <u>/s/ Thomas J. Leach</u>
                                                   MERCHANT & GOULD P.C.
                                                   Thomas J. Leach (MN 311844)
                                                   Michael A. Erbele (MN 393635)
                                                   150 South Fifth Street, Suite 2200
                                                   Minneapolis, MN 55402
                                                   Phone:  (612) 332-5300
                                                   Fax: (612) 332-9081
                                                   tleach@merchantgould.com
                                                   merbele@merchantgould.com

                                                   Peter A. Gergely *(Pro Hac Vice)*
                                                   1801 California Street, Suite 3300
                                                   Denver, CO  80202
                                                   Phone:  (303) 357-1670
                                                   Fax: (612) 332-9081
                                                   pgergely@merchantgould.com

SUSMAN GODFREY L.L.P.
Steven Sklaver (*Pro Hac Vice*)
Glenn Bridgman (*Pro Hac Vice*)
Rohit D. Nath (*Pro Hac Vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
Phone:  (310) 789-3100
ssklaver@susmangodfrey.com
gbridgman@susmangodfrey.com
rnath@susmangodfrey.com

Seth Ard (*Pro Hac Vice*)
Ryan C. Kirkpatrick (*Pro Hac Vice*)
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Phone:  (212) 336-8330
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com

Ryan Weiss (*Pro Hac Vice*)
Krisina Zuñiga (*Pro Hac Vice*)
1000 Louisiana Street, Suite 5100
Houston, TX  77002
Phone:  (713) 651-9366
rweiss@susmangodfrey.com
kzuniga@susmangodfrey.com

*Attorneys for Plaintiffs*