## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Advance Trust & Life Escrow Services, LTA, as securities intermediary for Life Partners Position Holder Trust, and Alice Curtis, on behalf of themselves and all others similarly situated, | Civil No. 18-2863 (DWF/BRT) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| ReliaStar Life Insurance Company, | |
| Defendant. | |

Glenn Charles Bridgman, Esq., Krisina J. Zuniga, Esq., Rohit D. Nath, Esq., Ryan C. Kirkpatrick, Esq., Ryan Thomas Weiss, Esq., Seth D. Ard, Esq., and Steven G. Sklaver, Esq., Susman Godfrey LLP; and Michael A. Erbele, Esq., Peter A. Gergely, Esq., and Thomas J. Leach, III, Esq., Merchant & Gould, counsel for Plaintiffs.

Casey L. Hinkle, Esq., Clark C. Johnson, Esq., Michael T. Leigh, Esq., Kaplan Johnson Abate & Bird LLP; and Douglas L. Elsass, Esq., Nilan Johnson Lewis PA, counsel for Defendant.

## INTRODUCTION

This matter is before the Court on Defendant ReliaStar Life Insurance Company's ("ReliaStar") Motion for Summary Judgment (Doc. No. 164) and Plaintiffs' Motion for Class Certification (Doc. No. 146). For the reasons set forth below, the Court denies ReliaStar's motion for summary judgment and grants Plaintiffs' motion for class certification.

## BACKGROUND

This case involves a single cause of action for breach of contract.  (Doc. No. 132 (Second Am. Class Action Comp.  ("SAC") ¶¶ 46-50.)  Plaintiffs are Advance Trust & Life Escrow Services, LTA ("ATLES") and Alice Curtis ("Curtis") (together, "Plaintiffs").  Plaintiffs allege that ReliaStar breached life insurance contracts that ReliaStar, or its predecessors-in-interest[1], issued by:  (1) failing to determine the cost of insurance ("COI") rates based on expected future mortality experience and deducting COI charges calculated using unlawful rates; and (2) charging rider rates in excess of those specified in the policies.  (SAC ¶ 48.)

The insurance contracts at issue here are flexible premium adjustable life insurance policies (universal life ("UL") insurance).  This type of policy combines death benefits with a savings or investment component and allows policyholders to decide how much premium to pay into the policy on any given month, subject to contractually specified limits.  Then, after the deduction of certain charges, including COI charges, the remaining premiums ("accumulated value") earn interest set by the insurance company, subject to a guaranteed minimum (here, 4.5%).  (*See generally* Doc. No. 162-1 ¶¶ 7-19; Doc. Nos. 151-1, 151-6.)  Subject to contractual provisions, a contract owner can borrow a portion of their accumulated value or terminate insurance coverage and take the accumulated value.  Plaintiffs' contracts provide that if an insured dies while the contract

---

[1]     ATLES sues on behalf of Life Partners Position Holder Trust ("Life Partners"), which emerged from the bankruptcy of Life Partners, Inc.

is in force, beneficiaries are entitled to a "level" death benefit but not a death benefit plus any cash value associated with the contract.  (Doc. Nos. 151-1, 151-6.)

ATLES' action is based on a contract issued in Texas to Daniel Gutierrez ("Gutierrez") in 1988.  (Doc. No. 162-6.)  Per that contract, Gutierrez planned to make annual premium payments of $182 in exchange for $25,000 in death benefits protection. (Doc. No. 151-6 at 24-25.)  Gutierrez paid the premium for several years and then sold his interest in the contract to Life Partners.  Life Partners (and their successors) have continued to pay the premium.  When Life Partners purchased the contract, it was expected to remain in force until 2025.

In 1991, Plaintiff Curtis purchased her insurance contract.  She planned to pay $2,160 per year in premiums in exchange for a $250,000 death benefit.  (Doc. No. 162-7 at 24-25.)  Curtis took a loan out against the policy's cash value and eventually elected to terminate the contract in 2019.  (Doc. Nos. 162-22; 162-12; 162-14; 162-15.)

The terms of the relevant policy contracts allow ReliaStar to make monthly deductions from the policy for the COI, the monthly expense charge, and the cost of additional benefits provided by the rider.  (Doc. Nos. 151-1, 151-6.)  As to the COI, the policies provide:

> The monthly cost of insurance rate is based on the insured person's sex, attained age, and rating class. . . . *Monthly cost of insurance rates will be determined by us from time to time.  These rates will be based on our expected future mortality experience.* . . . The cost of insurance rates, however, will not be greater than those shown in the Table of Maximum Insurance Rates for Monthly Cost of Insurance . . .

(*Id.* (emphasis added).)

3

ReliaStar maintains that it routinely monitors how its mortality experience emerges, and how its actual experience compares to what it had anticipated. (Doc. No. 162-4 at 122-23, 148-49.) ReliaStar also asserts that it undertakes periodic large scale actuarial updates to its mortality assumptions. For example, in 2011, ReliaStar "significantly increased mortality rates for business owners originally written in Security-Connecticut Life." (Doc. No. 166-1 at RLIC-0006862.) However, at the same time, ReliaStar did not redetermine[2] and increase the COI rate for Plaintiffs' contracts (which were both originally written in Security-Connecticut Life), or for any other time in the last twenty years. Via its actuary, ReliaStar maintains that its COI rates reflect (but are not exclusively based on) its current expected future mortality experience ("EFME") and that its EFME is "both up and down" as compared to previous assumptions. (Doc. No. 162-4 at 82-83, 111; Doc. No. 162-1 ¶¶ 44, 69.) ReliaStar further maintains that insurers cannot and do not modify their rate scales on an annual basis or at an insured-by-insured or contract-by-contract level. (*Id*.) Finally, ReliaStar asserts that the relevant contract language does not contain the promise that ReliaStar will redetermine or reset COI rates every month or every year to match its then current anticipated mortality experience. (Doc. No. 165 at 7-8.)

Plaintiffs dispute whether ReliaStar's COI rates "reflect ReliaStar's current expected mortality experience" and whether insurers cannot and do not modify their rate scales on an annual basis. Instead, Plaintiffs submit evidence that ReliaStar's EFME are

---

[2]     The process of developing a rate scale is called a "determination," and adjustments to a scale is a "redetermination." (*See generally*, Doc. No. 162-1 ¶¶ 20-23, 32.)

quantified, documented, and have improved over the last two decades; and further contend that annual COI determinations are possible and not unusual.  (Doc. Nos. 151-25 ¶¶ 66-94, 95-100; Doc. No. 182 ¶ 24; Doc. No. 195-6 at 82, 100-01; Doc. No. 195-15 at 209-210 (acknowledging that an annual COI rate determination is not unusual); Doc. No. 195-16  ¶¶ 52 & n.40; Doc. No. 195-2 at RLIC-0060780; Doc. No. 181-1 at 84; Doc. No. 195-6 at RLIC-0080191.)[3]  Despite the improvement of EFME, Plaintiffs submit that ReliaStar's COI rates have stayed the same and, therefore, do not reflect its current EFME.  Finally, Plaintiffs dispute ReliaStar's contention that the contract does not promise a redetermination of COI rates, pointing to contractual language indicating that COI rates *will be* based on EFME and *will be* determined "from time to time."[4]

In 1997, a nationwide class action was filed in state court in Pennsylvania in *Alten v. Security-Connecticut Life Ins. Co.*, Civ. No, 97-0901761 (Pa. Ct. of Common Pleas).  The *Alten* case involved claims pertaining to the sale and administration of certain life insurance policies issued by ReliaStar's predecessor, Security-Connecticut Life.  The case settled for $16.5 million in class relief in exchange for a release of all alleged and prospective claims related to the class policies.  (*See* Doc. No. 162-2 at §§ 2.18 & 7.1.1.1.)  Specifically, the release read, in part:

---

[3]     Plaintiffs contend that the EFME has improved over time because people are living longer due to medical advancements, improvements in diet, reductions in smoking rates, and other factors.

[4]     Plaintiffs also point to ReliaStar documents that state: "the [COI] rate will be determined at the beginning of each policy year."  (Doc. No. 195-2 at RLIC-0060780.)

The parties agree and specifically acknowledge that this settlement is intended to fully and finally resolve all claims that were raised or that could have been raised in the pleadings in these two actions, including without limitation all claims related to the marketing, sale, and performance of the class policies (including all claims relating to crediting interest rates and *cost of insurance charges*) . . .

(Doc. No. 162-2 at § 1.1. (emphasis added).)  The term "Released Transactions" is defined to include the "administration (including the crediting of interest rates and policy charges and expenses) of the Policies."  (*Id*. § 7.1.1.3.)  *Alten* class members released claims "that have been, could have been, may be or could be alleged or asserted now or in the future," to the extent any such claims would be "on the basis of, connected with, arising out of, or related to, in whole or in part, the Policies and/or Released Transactions."  (*Id*. at §§ 1.1 & 7.1.1.3 & 7.1.2.1.)  Also, the releases apply to the Defendant insurance-company's successors and assigns, which includes ReliaStar.  (*Id*. at § 7.1.1.2.)  The Settlement Agreement provides that nothing in the release alters a class member's right to assert a claim which "arises in its entirety from facts and circumstances" occurring after the settlement, provided that the "provision shall not entitle a Class Member to assert claims which relate to the allegations contained in the Actions or matters described in part 7.1.2.1 above."  (*Id*. at § 7.1.2.3.)  ReliaStar asserts that Curtis was part of the *Alten* class because, at the time of the *Alten* settlement, Curtis owned an in-force policy covered by the litigation, and that the *Alten* settlement resolves her claims against ReliaStar.

In 1989, Security-Connecticut also increased by 15% the charge imposed for a rider—specifically, the waiver of monthly deduction rider, which provides for the

suspension of charges or deductions should the insured become totally disabled.  The
Gutierrez contract, on which ATLES sues, includes this rider.  (Doc. No. 151-6.)

Plaintiffs now bring the present lawsuit for breach of contract.  Specifically,
Plaintiffs argue that ReliaStar breached its contracts with Plaintiffs and the proposed
classes by (1) failing to determine COI rates based on EFME and deducting COI charges
calculated based on unlawful rates, and (2) charging rider rates in excess of the rates
specified in the policies.

ReliaStar moves for summary judgment, arguing that Plaintiffs' claims fail as a
matter of law in the face of the plain contract language, the weight of authority, and
because the COI rates ReliaStar has charged were determined based on its anticipated
mortality experience.  In addition, ReliaStar argues that Curtis's claims are barred by the
*Alten* settlement, that ATLES lacks standing, and that the rider claim is barred by the
statute of limitations or laches.  Also before the Court is Plaintiffs' motion for class
certification.

## DISCUSSION

## I.    Summary Judgment

Summary judgment is proper if there are no disputed issues of material fact and
the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The
Court must view the evidence and the inferences that may be reasonably drawn from the
evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank
of Mo*., 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated,
"[s]ummary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).

## A.      Breach of Contract—COI Rates

Plaintiffs argue that ReliaStar breached its contracts with Plaintiffs and the proposed classes by failing to determine COI rates based on EFME and deducting COI charges calculated based on unlawful rates. ReliaStar moves for summary judgment on this claim.

At the heart of this claim is the meaning of the phrase "rates will be based on." ReliaStar argues that the phrase does not require that COI rates be based exclusively on EFME or that the rate scale be lowered if EFME improves. Plaintiffs argue that the phrase "based on" can reasonably be understood to mean exclusively based on EFME, and at a minimum, is ambiguous.

The policy contains no definition for the phrase "based on" so the Court must use principles of contract interpretation to ascertain the intent of the parties. ATLES's policy is governed by Texas law, and Curtis's policy is governed by Tennessee law. Under Minnesota's choice-of-law rules, the law of the policy's issue state applies. *Am. Cas. Co. of Reading Pa. v. Bank of Mont. Sys.*, 675 F. Supp. 538, 545 (D. Minn. 1987). Texas and Tennessee law both interpret contracts so as to ascertain and give effect to the intent of the contracting parties and to employ well-settled contract interpretation tools. *See, e.g.*, *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006); *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 894 (Tex. 2017).[5]

ReliaStar argues that the plain language of the policy directly refutes any claim that COI rates must be *exclusively* "based on" EFME and further that Plaintiffs' proposed construction of this phrase would incorrectly require that COI rates must be exactly equal to the EFME. ReliaStar argues that "based on" does not connote exclusivity as a matter of plain meaning, in the context of life insurance generally, or in the particular context of the relevant contracts here. ReliaStar relies on cases holding that the meaning of the phrase "based on" does not connote exclusivity. *See, e.g.*, *Slam Dunk I, LLC v. Conn. Gen. Life Ins. Co.*, 853 Fed. App'x 451, 454-55 (11th Cir. 2021); *Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145, 1150 (7th Cir. 2013); *Thao v. Midland Nat'l Life Ins.*

---

[5]     Under Texas law, if a contract is found to be ambiguous, then the determination of intent is a question of fact. *Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 768 (5th Cir. 1995). Under Tennessee law, ambiguity as to the meaning in an insurance contract is construed favorably to provide coverage to the insured. *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d at 768.

*Co.*, 549 Fed. App'x 534, 537 (7th Cir. 2013). ReliaStar maintains that these, and additional cases, have considered the plain meaning of the phrase "based on" and the "reality of insurance" to conclude that COI rates need not be based exclusively on anticipated mortality experience.

Plaintiffs argue that ReliaStar's proposed construction of the "based on" language is meritless and, at a minimum, raises disputed questions of fact. In support, Plaintiffs rely on the Eighth Circuit's decision in *Vogt v. State Farm Ins. Co.*, 963 F.3d 753 (8th Cir. 2020), other cases, uses of the phrase "based on" in the policies' sections governing COI rates and minimum cash values, the ordinary meaning of the phrase "based on," and documents produced by ReliaStar. In short, Plaintiffs argue that the phrase "will be based on," when followed *only* by EFME, can reasonably be understood to prohibit imposition of COI charges due to other non-EFME factors, or, at a minimum, prohibits ReliaStar from ignoring EFME.[6]

---

[6] Plaintiffs argue that several of the cases relied upon by ReliaStar are distinguishable because they involve materially different policy language that does not state that an insurer will determine COI rates based on its EFME. For example, Plaintiffs point out that the language at issue in *Norem v. Lincoln Benefit Life Co.* was broader—stating COI rate is "based on an insured's sex, issue age, policy year, and payment class"—and that the court expressly distinguished COI provisions that mention EFME. 737 F.3d at 1154 ("*Norem*'s COI provision of course says nothing about 'mortality experience' as the basis for the COI rate[.]"). In addition, in *Thao v. Midland Nat'l Life Ins. Co.*, the relevant policy stated that "[COI] Rates are *based on* the Issue Age, completed Policy Years, Sex, Specified Amount, and Premium Class of the Insured" and that "[c]hanges in the [COI] Rates . . . will be based upon changes in future expectations for *such elements as* investment earnings, mortality, persistency, and expenses." 549 Fed. App'x at 536-38 (emphasis added). Here, the policies specifically state that the COI rates will be "based on our [EFME]."

In *Vogt*, the Eighth Circuit (applying Missouri law) interpreted a COI provision that provided that rates "*are based on* the Insured's age on the policy anniversary, sex, and applicable rate class." 963 F.3d at 761 (emphasis added). Rejecting the insurer's argument that the provision allows it, as a matter of law, to include other unlisted factors into its COI calculation, the Eighth Circuit held that "the phrase 'based on' is *at least ambiguous*." *Id*. at 764 (emphasis added). ReliaStar argues that *Vogt* is best understood as an anomaly of Missouri law, and that various other courts have concluded that "based on" in the context of a COI provision does not connote exclusivity.

Plaintiffs further argue that the phrase "will be based on" is both mandatory and prospective, making it reasonable to conclude that it requires that COI rates will be based only on EFME. *See, e.g.*, *Yue v. Conseco Life Ins. Co.*, Civ. No. 08-1506, 2011 WL 210943, at *9-10 (C.D. Cal. Jan. 19, 2011). Plaintiffs point to dictionary definitions and common usage of "based on" to argue that the phrase could reasonably be understood to mean exclusively. Further, Plaintiffs argue that the use of the phrase "based on" in other portions of the policies in reference to COI rates and minimum cash values support the conclusion that it means exclusively.

After careful review of the record, the parties' arguments, and the relevant case law, the Court finds that the parties offer differing, albeit reasonable, interpretations of the policy language. In particular, Plaintiffs' interpretation of "will be based on" as language that connotes exclusivity is reasonable, and Plaintiffs have raised a genuine issue of fact as to whether the language is ambiguous. In addition, even if the Court were to adopt ReliaStar's reading of the "based on" language, summary judgment would still

11

be inappropriate.  Under ReliaStar's proposed meaning—that "based on EFME" means that consideration of EFME is nonexclusive (that ReliaStar may consider multiple factors in addition to EFME), Plaintiffs submit evidence that could lead a reasonable jury to believe that ReliaStar impermissibly ignored the EFME as one of those factors.  Because genuine issues of fact remain, the Court denies ReliaStar's motion for summary judgment on this claim as to Plaintiff's breach of contract claim based on COI rates.

### B.   *Alten* Settlement and Curtis's Claims

ReliaStar argues that Curtis's Policy is part of the *Alten* class action settlement and that Curtis is therefore barred from reasserting her claims in this action.  Plaintiffs disagree and argue that there is no preclusion because Curtis's claims arose from a different factual predicate and accrued after the settlement in *Alten*.[7]  Plaintiffs also argue that the Court "is left largely in the dark" as to what exactly was asserted, and therefore released, in the *Alten* litigation because ReliaStar did not produce or attach a copy of the *Alten* Complaint.  Further, Plaintiffs contest whether a failure to determine COI rates based on EFME was alleged in the *Alten* case.  Because the record is not clear as to the scope of the claims asserted and released in the *Alten* case, summary judgment is inappropriate.

---

[7]   Plaintiffs dispute that the *Alten* litigation resolves her present claims because, as of the date of the *Alten* settlement, ReliaStar had not yet calculated or deducted the COI charges that are in dispute here because the EFME for later years did not exist at the time. (*See* Doc. No. 181-1 at 345.)

### C.    Standing

ReliaStar argues that ATLES lacks standing to assert a claim based on allegedly excessive COI charges.  In support, ReliaStar asserts that ATLES does not own the policy and its interest in the policy's cash value is only hypothetical because ATLES has not withdrawn any of its policy's cash value and will not receive it when the insured passes. The Court is not persuaded by ReliaStar's argument for two reasons.  First, the record demonstrates that ATLES owns the policy at issue.  (Doc. No. 182-2 at RLIC-00092957; Doc. No. 181-3 at 16 (ATLES corporate representative explaining that the policies are owned by ATLES, who serves as the securities intermediary for [Life Partners]); Doc. No. 25 at 2-3.)  As the securities intermediary, ATLES has standing to assert claims on the policies on Life Partner's behalf.  *See, e.g.*, *ATLES v. Sec. Life of Denver Ins. Co.*, Civ. No, 1:18-01897, 2020 WL 8186476, at *3 (D. Colo. April 13, 2020 ("Advance Trust has a personal stake in this matter and particularized injury.").  Second, the Court finds that ATLES's alleged injury is not hypothetical, as it has alleged a "legal injury—breach of contract" and it has a judicially cognizable interest for standing purposes.  *See, e.g.*, *Vogt*, 963 F.3d at 766.

### D.    Breach of Contract—Rider Charge

ATLES alleges that ReliaStar breached its contracts by charging rider rates in excess of those specified in the policies.  (SAC ¶ 1.)  In particular, ATLES alleges that ReliaStar has been overcharging policyholders who purchased a rider that provides for the waiver of monthly charges in the event that the insured suffers total disability ("Waiver Rider").  (*Id*. ¶ 9.)  ReliaStar deducts a separate monthly charge for the Waiver

Rider, which is referred to as the rider charge. (*Id.*) ATLES asserts that the policies provide that this rider charge is to be calculated using rates specified in the policies and that there is no discretion to charge rider rates that diverge from the contractually-specified rate. (*Id.*) ATLES maintains that ReliaStar ignored the contractual rider rates and imposed an overcharge of at least 15%, in breach of the terms of the policies. (*Id.* ¶¶ 9, 31-34, 48.)

ReliaStar moves for summary judgment on this claim on the grounds that it is barred by the statute of limitations or laches. In support, ReliaStar points to evidence that the change to the rate tables to increase rider rates by 15% was done by ReliaStar's predecessor in 1989, and that the change was first applied to the Gutierrez policy (on which ATLES bases its rider claim) in February 1990. (Doc. No. 166-2 at 175-78.) ReliaStar further asserts that the rider claim, therefore, accrued in February 1990 for the purpose of applying the statute of limitations and is time-barred or, in the alternative, is barred by laches.

The Court notes that Magistrate Judge Elizabeth Cowan Wright considered the issue of whether Plaintiff's rider claim is futile because it is barred by the statute of limitations in the context of a motion to amend the complaint. (Doc. 131 at 17-24.) Much of that analysis is relevant here. Magistrate Judge Cowan Wright considered ReliaStar's contention that a breach of contract claim accrues at the time of the alleged breach, regardless of whether a plaintiff is aware of the breach. Magistrate Judge Cowan Wright pointed out that ATLES's theory of breach here is based on an ongoing breach theory, and that ATLES asserts repeated monthly overcharges, each with a separate

14

accrual date.  The Court agrees with Magistrate Judge Cowan Wright's prior analysis.

Plaintiffs' rider charge claim breach is based on the theory of an ongoing breach.  Such a

theory is allowed under *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801, 803 (Minn. 1989)

(finding that a series of breaches constituted separate causes of action with different

accrual dates).[8]  The Court concludes that, on this record, ReliaStar has not demonstrated

that ATLES's rider claim is barred by the statute of limitations.

ReliaStar also argues that ATLES's rider claim is barred by laches.  Laches bars a

claim where there has been an unreasonable delay in asserting one's rights and a good

faith change of position by another to his detriment because of the delay.  *Houston*

*Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 639 (Tex. App. 2003).

ReliaStar contends that a delay of roughly 30 years in bringing the rider claim gives rise

to laches, particularly because the delay deprives ReliaStar of a fair opportunity to defend

against the claim.  ATLES, however, points out that "laches should not bar an action on

which limitations has not run unless allowing the action 'would work a grave injustice.'"

*Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) (citation omitted).  In addition,

ATLES underscores that this is not a case in equity and disputed fact issues remain as to

whether ReliaStar concealed the existence of the breach because, as ATLES claims,

ReliaStar did not know about it until Plaintiffs requested specific discovery on the issue.

---

[8]    The Court also notes its agreement with Magistrate Judge Cowan Wright's
analysis of the case law, and in particular in distinguishing the cases relied on by
ReliaStar under both Minnesota and Texas law.

(Doc. No. 181-5 at 177-78.)  The Court concludes that, based on the record before it,

ReliaStar has failed to demonstrate that the rider claim is barred by laches.

## II.   Class Certification

Plaintiffs move the Court for an order certifying this case as a class action under

Rule 23(b)(3) on behalf of the following classes:

**COI Class**:  All current and former owners of UL (including variable UL)
policies insured by ReliaStar written on policy forms listed in Exhibit A
who were assessed COI charges during the Class Period, excluding policies
issued in Alaska, Arkansas, New Mexico, New York, Virginia,
Washington, and Wyoming, policies listed in Exhibit B, and ReliaStar, its
officers and directors, members of their immediate families, and their heirs,
successors or assigns.

The "Class Period" starts on the following dates through final judgment:

| Class Period Start Date | Issue Date |
| --- | --- |
| October 5, 2003 | Kentucky |
| October 5, 2008 | Illinois, Indiana, Iowa, Louisiana, Rhode Island, West Virginia |
| October 5, 2010 | Montana, Ohio |
| October 5, 2012 | Alabama, Arizona, Connecticut, Georgia, Hawaii, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nevada, New Jersey, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, Wisconsin |
| October 5, 2013 | Florida, Idaho, Kansas, Missouri, Nebraska, Oklahoma |
| October 5, 2014 | California, Pennsylvania, Texas |
| October 5, 2015 | Colorado, Delaware, Maryland, New Hampshire, North Carolina, South Carolina, Washington D.C. |

Alternatively, Plaintiffs move for certification of one of the following classes (the

"Alternative Classes"):

> **Modified Four Corners and Four Corners COI Class**:  All members of
> the COI Class, excluding owners whose policies were issued in Arizona
> and California.

> **Texas and Tennessee COI Class**:  All members of the COI Class whose
> policies were issued in Texas and Tennessee.

In addition, Plaintiffs move for certification of the following **Rider Class:**

> All current and former owners of universal life policies insured by
> ReliaStar written on policy forms 10830 and 10910, excluding policies
> issued in Alaska, Arkansas, New Mexico, New York, Virginia,
> Washington, and Wyoming, who were assessed Waiver Rider charges
> during the Class Period.

Further, Plaintiffs request that they be appointed class representatives for the COI

Class (and any Alternative Classes); ATLES be appointed class representative for the

Rider Class; and Susman Godfrey be appointed as Class Counsel.

Federal Rule of Civil Procedure 23 governs class certification.  A party seeking

class certification must meet the requirements of Rule 23(a) by establishing that:  (1) the

class is so numerous that joinder of all members is impracticable; (2) there are questions

of law or fact common to the class; (3) the claims or defenses of the representative parties

are typical of the claims of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In addition, plaintiffs

must satisfy one of the three subsections of Rule 23(b).  *See Stuart v. State Farm Fire &*

*Cas. Co.*, 910 F.3d 371, 374 (8th Cir. 2018).  Here, Plaintiffs seek certification under

Rule 23(b)(3), which requires a showing that "questions of law or fact common to class

members predominate" and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(a).

District courts retain "broad discretion" in determining whether to certify a class. *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d at 374.  The party seeking class certification carries the burden of proof regarding the requirements of Rule 23.  *See Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

Plaintiffs argue that this case presents a central question with a common answer— whether ReliaStar violated the plain language of fully integrated, standardized, form life insurance policies owned by members of the Classes.  Plaintiffs submit that ReliaStar sold life insurance products to tens of thousands of customers using common, form policies.  Moreover, Plaintiffs submit that the relevant provisions of those policies contain no material difference, and in each policy, ReliaStar promised that the COI rates charged will be determined by ReliaStar based on its EFME.  Plaintiffs further submit that when ReliaStar's EFME changed, ReliaStar did not use the same EFME to reduce the COI rates as required by the policies.  In addition, Plaintiffs allege that ReliaStar was charging "Waiver Riders" rates that were 15% higher than was contractually allowed. Plaintiffs maintain that, at trial, they will present common evidence that ReliaStar breached its policies and overcharged the class members.

Plaintiffs submit that the following examples of common evidence establish that COI rates are not based on ReliaStar's EFME and the extent of the alleged overcharges: (1) the COI class policies are fully integrated, standard, form contracts that all contain the common promise that the COI rates will be based on ReliaStar's EFME; (2) the policies

in the COI Class were issued on one of forty-one policy forms with that same language and are not subject to individual negotiation; (3) the EFMA language at issue in the COI Class differs from other UL policies insured by ReliaStar, which provide that COI rates will be based on numerous other factors besides EFME (*see, e.g.*, Doc. No. 151-7 at RLIC-0000395); (4) every policy contains the same class-wide formula for computing the COI charge[9]; (5) ReliaStar maintains systems that automatically calculate mortality charges each month using class-wide COI rate tables (Doc. No. 151-25 at ¶¶ 52-54; Doc. No. 150-2 at 2); (6) ReliaStar's EFME are documented, measurable, and objective, and ReliaStar's "mortality is updated annually and monitored quarterly" and a "committee meets at least annually to review and potentially update . . . mortality assumptions" (Doc. No. 151-4 at EY-RELI-000052; Doc. No. 151-15 at RLIC-0080191); (7) ReliaStar's documents and records its EFME in common files; (8) ReliaStar prepares an annual "Business Summary Review Memoranda," which officially document the "best estimate" mortality assumptions for the upcoming year (the then-current EFMA); (9) ReliaStar files an annual memorandum and opinion with regulators which uses EFME; (10) ReliaStar uses its EFMA for internal projections; and (11) audit materials. Plaintiffs maintain that this common evidence can also be used to establish damages.

ReliaStar opposes certification and argues that Plaintiffs' breach of contract theories are not suitable for class treatment because the Court will have to address

---

[9]    "This calculation of COI charges for the COI Class Policies is a consistent, non-varying mathematical process applicable on a class-wide basis. It is entirely a function of the net amount at risk and the applicable monthly COI rate—both of which are stored or maintained by or for ReliaStar for every COI Class Policy." (Doc. No. 151-25 ¶ 52.)

conflicting law on the issues of contract interpretation and that any resort to extrinsic evidence to interpret the contracts will create individual issues of interpretation. Further, ReliaStar argues that ATLES's rider claim creates individualized issues of law, including whether applicable state law would countenance an "installment contract" breach theory, when the claim accrued, and the applicability of the discovery rule. Further, ReliaStar maintains that many class members lack standing and that there are serious intra-class conflicts. Finally, ReliaStar asserts that neither ATLES nor Curtis can adequately represent the putative class.

Below, the Court considers whether Plaintiffs meet the requirements for class certification in the context of ReliaStar's arguments.

### A.   Numerosity

Rule 23(a)(1) requires that a class be sufficiently numerous to render joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1). Here, there are over 36,000 policies in the COI Class and 854 policies in the Rider Class. (Doc. No. 151-26 ¶ 48.) ReliaStar does not appear to contest that the numerosity requirement is met. The Court finds that the proposed class members are sufficiently numerous.

### B.   Commonality

A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To demonstrate commonality, a plaintiff must show that the claims "depend upon a common contention" that "is capable of class wide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality requirement is easily satisfied in most cases, *see Vogt v. State Farm*, Civ. No. 2:16-04170, 2018 WL 1955425, at *2 (W.D. Mo. Apr. 24, 2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020), and it does not require that "all question of law or fact be common to the class." *Id*. (citation omitted). The requirement may be satisfied where the question of law linking the class members is substantially related to the resolution of the litigation, even if individuals are not identically situated. *Id*.

Plaintiffs' breach of contract claims in this action—involving the COI rates and rider charges—each turn on the interpretation of materially similar provisions in form UL insurance policies. Here, there are several common questions with common answers arising from the breach of contract claims so as to satisfy the commonality requirement. The common questions include: (1) whether the policies' terms required ReliaStar to adjust COI rates to reflect EFME (or to at least consider EFME); (2) what ReliaStar's EFME were; (3) what the but-for COI rates were; (4) the meaning of EFME; (5) whether ReliaStar could impose Waiver Rider charges using rates exceeding those set forth in the policies; and (6) whether Plaintiffs are entitled to damages and, if so, how much. The Court finds that the commonality requirement is met.

## C.    **Typicality**

The typicality requirement is met when the claims or defenses of the representative party are typical of those of the class. Fed. R. Civ. P. 23(a)(3). The requirement is fairly easily met so long as other class members have similar claims as the named plaintiff. *See Custom Hair Designs by Sandy v. Cent. Payment Co.*, 984 F.3d 595,

604 (8th Cir. 2020).  "Factual variations in individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."  *Id.* (citation omitted).

Here, Plaintiffs' claims of the putative class members all arise from the insurance policies with nearly identical policy language and relate to the interpretation and application of that policy.  In particular, a common legal theory applies to all class members—that they were injured when ReliaStar engaged in a common course of conduct and breached the policies by imposing excess charges.  *See Vogt v. State Farm Life Ins. Co.*, 2018 WL 1955425, at *5 ("Both the contractual language and State Farm's methodology for determining the COI rates were uniform for all class members.  The requirement of the typicality is thus satisfied.").  The Court finds that the typicality requirement has been met. [10]

### D.    Adequacy of Representation

Rule 23(a)(4) requires that the class representative and class counsel will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is met where:  "(1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge."  *City of Farmington Hills Emps. Ret. Sys.*, 281 F.R.D. 347, 353 (D. Minn. 2012).  The requirement of adequacy "serves to uncover conflicts of interest between

---

[10]    ReliaStar merges its arguments on typicality and adequacy.  The Court discusses those arguments in more detail in the discussion of adequacy below.

named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Plaintiffs argue that their interests align with those of the proposed class members because they all seek to maximize recovery of the overcharges flowing from ReliaStar's breaches.  Plaintiffs also point out that ATLES was found adequate to be an adequate class representative in another class action, *Advance Trust & Life Escrow Servs., LTA v. Sec. Life of Denver Ins. Co. ("SLD COI")*, Civ. No. 1:18-01897, 2021 WL 62339 (D. Colo. Jan. 6, 2021), and that both Plaintiffs have actively participated in this action and understand their obligations.  (Doc. Nos. 150-4, 150-5.)  Plaintiffs also maintain that Susman Godfrey has qualified and experienced attorneys with the resources to vigorously prosecute the action and has been found adequate class counsel in several similar class actions, including *SLD COI*.

ReliaStar disputes that the adequacy requirement is met here for several reasons. First, ReliaStar argues that some class members would benefit and others would be harmed under Plaintiffs' theory of the case, and thus an intra-class conflict precludes satisfying the adequacy requirement.[11]  Plaintiffs respond that any intra-class conflict is based on speculation that some policyholders may be charged more in the future if

---

[11]     ReliaStar asserts that if the Court concludes that the contract requires it to set rates each year using the best estimate assumptions prepared each year for financial reporting, some class members would be worse off because they were undercharged.  However, as Plaintiffs point out, any decision by ReliaStar to charge lower than its EFME for certain policies at certain times would simply show that there was no overcharge for those periods, not that such policies would have been charged more but for the breach.  And in any event, such an argument goes to the merits of the breach of contract claim.

ReliaStar is found liable and submit that every Class member is entitled to damages.

(Doc. No. 182-1 at ¶¶ 8-9.)

> The Eighth Circuit in *Vogt* considered a similar argument and rejected it:
>
> This purported conflict is entirely speculative and is insufficient to render class certification inappropriate because it relies on nothing more than conjecture about how this lawsuit will affect State Farm's future dealings with current policyholders. . . . What will happen with current State Farm policyholders in the future rests on "uncertain predictions" that cannot serve as a basis to defeat class certification.

*Vogt*, 963 F.3d at 767. The Court concludes that the asserted intra-class conflict does not

defeat typicality or adequacy. Here, Plaintiffs seek only damages, meaning class

members could benefit.[12]

Second, ReliaStar argues that ATLES fails to satisfy adequacy because it has no

stake in the litigation and is not subject to the *Alten* Defense. In support, ReliaStar argues

that ATLES does not own the policy on which it bases its claims, is not a beneficiary

under the policy, and does not have an economic interest in the policies. ReliaStar claims

that ATLES is simply a temporary bank account for holding death benefits on policies

and distributing them at the direction of Life Partners. (Doc. No. 162-5 at 12, 17, 21-24.)

ReliaStar argues that neither ATLES (as an escrow agent for death benefits prior to those

being paid to third-party investors in life insurance contracts) nor Life Partners (which is

designed to liquidate trust assets to maximize their value) possess the "same interest" and

---

[12] This case is distinguishable from *Thao v. Midland Nat'l Life Ins. Co.*, Civ. Nos. 13-1272, 13-2366, 2012 WL 1900114, at *3-4 (E.D. Wis. May 24, 2013), where certification was denied in a case where a plaintiff sought damages and an injunction requiring an adjustment in COI rates. Here, Plaintiffs seek damages, not an injunction that would require an alternative (higher) rate in the future.

has suffered the same injury as the owner of the contracts who pay COI charges.

ReliaStar argues that this makes ATLES both atypical and inadequate to represent the

class.  In addition, ReliaStar argues that because ATLES's contract was not included in

the *Alten* class action settlement, the issues associated with its claims are not typical of

those other class members, a substantial portion of whom are subject to the defense and

release of the *Alten* settlement.  ReliaStar further argues that ATLES is an inadequate

representative because it has no interest in how the Court addresses the application of that

defense.

  The Court finds that ATLES satisfies typicality and adequacy.  First, as discussed

above, the record demonstrates that ATLES is the owner of the policy at issue.  ReliaStar

has not demonstrated that ATLES, as the owner, does not share common objectives or

legal and factual positions with the other class members.  *See, e.g.*, *ATLES v. Sec. Life of*

*Denver Ins. Co.*, 2020 WL 8186476, at *3.  Second, the fact that ReliaStar may assert a

defense against the claims of some class members on the basis of the *Alten* release does

not defeat adequacy here.  Instead, this issue can be managed through the creation of sub-

classes.

  Finally, ReliaStar argues that Curtis is not an adequate class representative.

ReliaStar asserts that due to her membership in the *Alten* settlement class, Curtis faces a

disqualifying conflict of interest with members who do not own policy forms included in

that class settlement which makes her unable to serve as a class representative.  In

addition, ReliaStar argues that because Curtis surrendered her policy, she has no interest

in obtaining lower COI rates going forward, and thus her interest in maximizing her

monetary damages would create a conflict with class members who might want to negotiate forward-looking relief. ReliaStar also suggests that Curtis is an inadequate representative because she had no issue with the COI charged until she was recruited to join the litigation, is unfamiliar with basic information regarding claims asserted on her behalf, and may be unwilling to commit to attending the trial in this matter.

Plaintiffs counter that Curtis has responded to discovery, produced documents, been deposed, and sufficiently understands this case. Plaintiffs point out that Curtis is 79 years old and plans to attend trial, health permitting. (Doc. No. 181-2 at 88.) In addition, Plaintiffs argue that the fact that Curtis incurred damages and then surrendered her policy does not render her an inadequate representative, as not every class member will have the same damages. Finally, Plaintiffs underscore that they do not seek declaratory relief or an injunction, making any alleged conflict speculative.

The Court finds that the adequacy requirement has been met, both as to the class representatives and class counsel.[13]

### E.    Rule 23(b)(3)

Under Rule 23(b)(3), a court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry tests

---

[13]    ReliaStar does not appear to dispute that Plaintiffs' attorneys are qualified to represent the class in this action. The Court separately finds that Plaintiffs' attorneys have extensive experience in prosecuting class actions and COI cases and will vigorously represent the Plaintiffs here.

whether proposed classes are sufficiently cohesive to warrant adjudication by

representation and is more demanding than Rule 23(a)'s commonality requirement.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. at 623-24.  When considering the facts of a

given case, "a claim will meet the predominance requirement when generalized evidence

proves or disproves the elements of the claim on a class-wide basis, because such proof

obviates the need to examine each class member's individual position."  *Buetow v. A.L.S.*

*Enters., Inc.*, 259 F.R.D. 187, 190 (D. Minn. 2009) (citation omitted).  The purpose of the

predominance requirement is to "achieve economy and efficiency in the settlement of

disputes."  *Vernon J. Rockler & Co., Inc. v. Graphic Enters., Inc.*, 52 F.R.D. 335, 344 (D.

Minn. 1971) (citing Fed. R. Civ. P. 23 advisory committee's note).

*Id.*  The Eighth Circuit articulates the test as follows:

> When determining whether common questions predominate, a court must
> conduct a limited preliminary inquiry, looking behind the pleadings, but
> that inquiry should be limited to determining whether, if the plaintiff's
> general allegations are true, common evidence could suffice to make out a
> prima facie case for the class.  While limited in scope, this analysis should
> be rigorous.

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011) (citations

omitted).

Plaintiffs argue that common factual issues predominate and that their claims—

that ReliaStar breached standardized provisions in printed, integrated, form UL insurance

policies—are appropriate for class action treatment.  ReliaStar asserts that common issues

of law do not predominate for several reasons, including (1) the existence of a split of

authority concerning the construction of cost of insurance provisions, (2) differences in

state-law applications of statutes of limitations that would make class treatment unmanageable, and (3) individual issues concerning each policyholder's intent.

The Court finds that the evidence on Plaintiffs' claims for breach of contract are capable of consideration on a class wide basis. The relevant terms of the policies are materially the same for all class members. In addition, ReliaStar has not suggested that COI rates or Rider Charges are determined differently in the relevant polices. And importantly, ReliaStar has not made a showing that the circumstances of any individual policyholder will impact the question of contract interpretation. Thus, the Court concludes that common questions predominate.

ReliaStar argues that state-law variations in the interpretation of COI provisions make a nationwide class action applying the laws of multiple states unworkable. For example, ReliaStar points out that some states have declined to interpret similar contract language as requiring COI rates to be based exclusively on EFME, thus foreclosing Plaintiffs' breach of contract claims in those states as a matter of law, and in other states, Plaintiffs have offered no guidance for predicting how the contract language will be interpreted. In addition, ReliaStar contends that the state-law applications of statutes of limitations  would also make class treatment unmanageable.

After careful consideration, the Court concludes that ReliaStar has not demonstrated that differences in state-law treatment of COI provisions and statutes of limitation defeat the predominance of the common questions here. Indeed, many of the purported differences relate to merits determinations that do not defeat predominance. Instead, Plaintiffs have convincingly shown that common choice-of-law issues

predominate and that variations of state law will be manageable.  For example, any differences pertaining to the admissibility of extrinsic evidence can be managed by grouping similar state laws together and applying them as a unit.  Plaintiffs also point out that courts apply a two-stage framework for interpreting form contracts—first determining whether an ambiguity exits and second, if necessary, having the fact-finder resolve any such ambiguity.  Plaintiffs further propose a framework for dividing the jurisdictions at each stage into manageable groups.  In this vein, Plaintiffs state that ReliaStar and its third-party administrator maintain records that list the owner and issue state for each class policy (*see, e.g.*, Doc. Nos. 151-18 at 48; 151-20 at 66-69), which would facilitate the grouping of policies.  Further, any statute of limitations defenses do not defeat predominance, namely because Plaintiffs seek damages for the Rider Class breaches that occurred within the un-tolled limitations period in each state and thus do not rely on any tolling.

ReliaStar also argues that the proposed class impermissibly includes uninjured members who lack standing.  The Court disagrees.  Even policies that have been paid in full may have suffered damage to their account values by paying excess COI charges. *See, e.g.*, *Vogt v. State Farm Ins. Co.*, 963 F.3d at 766; *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 300 (N.D. Cal. 2020).  And if not, a simple finding of no damages for particular policies is possible.

The final requirement under Rule 23(b)(3) is that the class action form be superior to other methods of adjudication.  The rule provides four nonexclusive factors to help determine if a class action is superior:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Having considered the relevant factors, the Court finds that a class action is the superior method of adjudication. First, the Court finds that any class member's interest in individually controlling the prosecution of a separate action is minimal and outweighed by the greater interest in having the claims heard as a class action. Second, thus far there has been no showing of individual actions against ReliaStar for the same claims. This is likely due to the fact that Plaintiffs' individual damages combined total under $6,000 (Doc. No. 151-26 ¶¶ 27-30), which suggests that there is little economic incentive to sue individually. Third, concentrating the litigation of these claims in one forum is desirable and will help avoid inconsistent adjudications. Finally, the Court is not aware of any unusual difficulties that would hamper the management of this class action. In light of the relevant considerations, the Court concludes that a class action is the superior method for adjudicating these claims pursuant to Rule 23(b)(3).

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendant's Motion for Summary Judgment (Doc. No. [164]) is respectfully **DENIED**.

2.      Plaintiffs' Motion for Class Certification (Doc. No. [146]) is **GRANTED**
consistent with this Order.

3.      The following classes are certified pursuant to Rule 23 of the Federal Rules
of Civil Procedure:

**COI Class**:  All current and former owners of UL (including variable UL)
policies insured by ReliaStar written on policy forms listed in Exhibit A
who were assessed COI charges during the Class Period, excluding policies
issued in Alaska, Arkansas, New Mexico, New York, Virginia,
Washington, and Wyoming, policies listed in Exhibit B, and ReliaStar, its
officers and directors, members of their immediate families, and their heirs,
successors or assigns.

The "Class Period" starts on the following dates through final judgment:

| Class Period Start Date | Issue Date |
|---|---|
| October 5, 2003 | Kentucky |
| October 5, 2008 | Illinois, Indiana, Iowa, Louisiana, Rhode Island, West Virginia |
| October 5, 2010 | Montana, Ohio |
| October 5, 2012 | Alabama, Arizona, Connecticut, Georgia, Hawaii, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nevada, New Jersey, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, Wisconsin |
| October 5, 2013 | Florida, Idaho, Kansas, Missouri, Nebraska, Oklahoma |
| October 5, 2014 | California, Pennsylvania, Texas |
| October 5, 2015 | Colorado, Delaware, Maryland, New Hampshire, North Carolina, South Carolina, Washington D.C. |

**Rider Class:**  All current and former owners of universal life policies insured by ReliaStar written on policy forms 10830 and 10910, excluding policies issued in Alaska, Arkansas, New Mexico, New York, Virginia, Washington, and Wyoming, who were assessed Waiver Rider charges during the Class Period.

4.     The parties are directed to meet and confer and within thirty (30) days of the date of this Order to submit a joint proposed procedure for providing notice of the Class Action.

5.     The Court appoints ATLES and Curtis as class representatives.

6.     The Court appoints Susman Godfrey as class counsel.

Dated:  March 29, 2022                    s/Donovan W. Frank_____
                                          DONOVAN W. FRANK
                                          United States District Judge